UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CHARLES M. THOMAS,

                                         Plaintiff,


v.                                                                3:24-cv-1235
                                                                  (DNH/TWD)


JUDGE BRETT S. NOONAN,

                                         Defendant.

_____

APPEARANCES:                                           OF COUNSEL:

CHARLES M. THOMAS
*Plaintiff, pro se*
650 Old Front St.
Room 233
Binghamton, NY 13905

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

### I.    INTRODUCTION

The Clerk has sent to the Court for review a complaint filed by *pro se* plaintiff Charles

M. Thomas ("Plaintiff"), together with an application to proceed *in forma pauperis* ("IFP").  Dkt.

Nos. 1, 2.  For the reasons set forth below, the undersigned recommends Plaintiff's complaint be

dismissed.

### II.    IFP APPLICATION

Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed

IFP.  *See generally*, Dkt. No. 2.  "28 U.S.C. § 1915 permits an indigent litigant to commence an

action in a federal court without prepayment of the filing fee that would ordinarily be charged."

*Cash v. Bernstein*, No. 1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  Upon

review, Plaintiff's IFP application demonstrates economic need, Dkt. No. 2, therefore, he is

granted permission to proceed IFP.

## III.    COMPLAINT

Plaintiff alleges on June 23, 2023, during a pre-trial teleconference before Defendant

Broome County Family Court Judge Brett S. Noonan, he terminated his court appointed attorney.

*See* Dkt. No. 1 at 3.[1]  Judge Noonan informed Plaintiff the court would not appoint another

attorney to represent him, therefore, Plaintiff would be required to either hire another attorney or

represent himself.  *See id*.  Judge Noonan further stated the pre-trial conference would proceed as

scheduled, irrespective of Plaintiff's lack of representation.[2]  *See id*.  He further states Judge

Noonan "had ex parte testimonial email communication with the opposing Attorney Kelly

Fischer" the same day.  *Id*.  Plaintiff avers "I am indigent and unable to hire a[n] Attorney and

was forced by Judge Brett S. Noonan to continue the legal proceeding without legal

representation."  *Id*.

On September 27, 2023, Plaintiff sent evidence supporting his defense to both Judge

Noonan and Attorney Fischer by email under the court's discovery rules.  *See id*.  The evidence

included a voice recording wherein "the Petitioner Emily Thomas self admittedly filed the

Petitions with False allegations under Fraudulent intent."  *Id*.

---

[1] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the
Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are
reproduced exactly as they appear in the original and errors in spelling, punctuation, and
grammar have not been corrected.
[2] The pre-trial conference concerned a "family offense criminal allegations and custody of
[Plaintiff's] daughter . . . witnessed by Emily Thomas . . . ."  Dkt. No. 1 at 3.

On October 15, 2023, Plaintiff sent Judge Noonan an email request for a continuance of the trial scheduled for October 17, 2023, in the state of New York, due to a medical emergency in the state of South Carolina. *See id*. at 4. Judge Noonan denied Plaintiff's request "and held the trial in [Plaintiff's] absence which falls under excusable Default of medical emergency and financial unable to get to the State of New York for trial." *Id*.

On October 17, 2023, Judge Noonan imposed a default judgment against Plaintiff which included "a No contact order . . . for Emily Thomas on a family offense," and "loss of custody, suspended visitation and No contact order of protection for a custody petition of the" Plaintiff's child. *Id*. The judgment was imposed "with only testimony of Emily Thomas to support his Judgement which was with excessive sentence and without legal representation." *Id*.

The complaint identifies six causes of action against the Defendant, Judge Brett S. Noonan, for: (1) the deprivation of Plaintiff's rights under U.S. law by denying a court appointed attorney to an indigent person facing loss of child custody and criminal charge allegations; (2) gross negligence for not reviewing the evidence in Plaintiff's defense before issuing a judgment against him; (3) violating the rights to adequate representation and legal counsel for defendants unable to afford counsel; (4) abuse of discretion by denying Plaintiff's request for a continuance of the trial; (5) imposition of an unjust and excessive sentence including loss of custody, suspended visitation, and no contact order against a defendant without legal representation, based solely on the opposing party's testimony; and (6) accepting ex parte testimonial communication. *See id*. at 5-6. Plaintiff seeks the following relief: "Vacate Default Judgement. Order of Protection of no contact against Judge Brett S. Noonan. $5,000,000 dollars cash in damages, punitive and compensatory and general damages. Also, any criminal charges under Federal law for the Constitutional Violations." *Id*. at 7.

## IV.    STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

As an initial matter, this Court lacks subject matter jurisdiction over Plaintiff's claims against the sole Defendant, Judge Noonan, under the *Rooker-Feldman* doctrine. *See generally*, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

"Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment." *Porter v. Nasci*, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005)) (additional citation omitted), *report and recommendation adopted*, 2024 WL 3158645 (N.D.N.Y. June 25, 2024).

> District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the

final state court order or judgment was rendered before the district court proceedings commenced.

*Id.* (citing *Dorce v. City of New York*, 2 F.4th 82, 100 (2d Cir. 2021)); *see also*, *e.g.*, *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

Here, Plaintiff's request to vacate the 2023 default judgment entered against him by Broome County Family Court satisfies all four elements.  Therefore, this Court is barred from reviewing Plaintiff's complaint against Defendant Judge Noonan by the *Rooker-Feldman* doctrine.  *See*, *e.g.*, *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker-Feldman* bars [plaintiff]'s challenges to the family court's decisions regarding custody, neglect, and visitation."); *see also*, *e.g.*, *Shibley v. Bixlerond*, No. 6:24-CV-0722 (BKS/TWD), 2024 WL 3460788, at *7 (N.D.N.Y. July 16, 2024), *report and recommendation adopted*, 2024 WL 4203975 (N.D.N.Y. Sept. 16, 2024).  Because the Court lacks subject matter jurisdiction over Plaintiff's claims, however, his complaint must be dismissed without prejudice.  *Fraccola v. Grow*, 670 F. App'x 34, 35 (2d Cir. 2016) (explaining, "[t]he *Rooker-Feldman* doctrine precludes district court review as a matter of subject matter jurisdiction . . . .  When a court lacks subject matter jurisdiction, it lacks the power to dismiss with prejudice . . . .") (citing *The Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004); *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)).

Additionally, Judge Noonan is immune from suit.  *See*, *e.g.*, *Scott v. Crossway*, No. 1:22-CV-0500 (BKS/CFH), 2022 WL 16646531, at *7-8 (N.D.N.Y. Nov. 3, 2022) ("As an alternative to the applicability of the *Rooker-Feldman* doctrine, were the Court to have subject matter jurisdiction over plaintiff's claims against [a New York State Judge], Judge Milano would be immune from suit."), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023).

"Absolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.'" *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).  Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  This absolute immunity for judges "is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Id*. at 209 (2d Cir. 2009) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)).  Accordingly, "even allegations of bad faith or malice cannot overcome judicial immunity." *Id*. (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir.), *cert. denied*, 522 U.S. 997 (1997)).

Here, Plaintiff's claims against Defendant Noonan arise from the Defendant's actions in his capacity as a family court judge in Broome County.  *See* Dkt. No. 1 at 5-6.  As such, Defendant Noonan is entitled to absolute judicial immunity.  *See*, *e.g.*, *Dudley v. Hochul*, No. 5:24-CV-0048 (DNH/ML), 2024 WL 1906594, at *6 (N.D.N.Y. May 1, 2024) (recommending claims against the defendant which appeared to arise from the defendant's efforts "in his capacity as a family court judge . . . . be dismissed based on the doctrine of judicial immunity."), *report and recommendation adopted*, 2024 WL 2399913 (N.D.N.Y. May 23, 2024).  Therefore, insofar as Plaintiff seeks relief against Defendant Noonan in his individual capacity, dismissal on the basis of judicial immunity is proper.  *See*, *e.g.*, *Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at *7 n.7 (N.D.N.Y. Jan. 26, 2022) (explaining, "[j]udicial immunity shields judges from suit to the extent that they are sued in their individual capacities.").

Furthermore, "States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (citation omitted). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)) (additional citation omitted). Accordingly, "Eleventh Amendment immunity has been extended to judges of the New York State Unified Court System." *Scott*, 2022 WL 16646531, at *7 (citing *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) ("the New York State Unified Court System is unquestionably an arm of the State . . . and is entitled to Eleventh Amendment sovereign immunity.").

The Broome County Family Court is a part of the New York State Unified Court System. *See*, *e.g.*, *Brooks v. Onondaga Cnty. Dep't of Child. & Fam. Servs.*, No. 5:17-CV-1186 (GLS/TWD), 2018 WL 2108282, at *3 n.5 (N.D.N.Y. Apr. 9, 2018) (explaining the Onondaga County Family Court is a part of the New York State Unified Court System), *report and recommendation adopted*, 2018 WL 2108187 (N.D.N.Y. May 7, 2018). Therefore, to the extent Plaintiff seeks to proceed against Defendant Noonan in his official capacity, dismissal of such claims as barred by Eleventh Amendment immunity is warranted. *See*, *e.g.*, *Treistman v. McGinty*, No. 1:16-CV-1403, 2018 WL 4078262, at *1 (N.D.N.Y. Aug. 27, 2018) (concluding the plaintiff's claims against the defendants in their official capacity as Family Court employees were barred by the Eleventh Amendment).

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**, and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam). Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated:  December 18, 2024
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]  At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**  TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit

his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2**  In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

•  In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

[3]    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff

in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

• In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

• In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM)(RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

• Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), citing *Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

> *Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.


## IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.


## V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).


## All Citations

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1142144
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. PORTER, III, Plaintiff,

v.

Susan Hamlin NASCI, Defendant.

5:24-CV-0033 (GTS/TWD)

|

Signed March 15, 2024

**Attorneys and Law Firms**

JOHN A. PORTER, III, 175 Parkside Ave, Syracuse, NY 13207, Plaintiff, pro se.


### ORDER AND REPORT-RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* complaint together with an application to proceed *in forma pauperis* ("IFP") filed by Plaintiff John A. Porter, III, to the Court for review. (Dkt. Nos. 1, 2.)


## I. BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 alleging Defendant Susan Hamlin Nasci, "acting as a non-judicial court employee without proper authority and jurisdiction," violated his "constitutional rights." [1] *Id.* Plaintiff claims "Defendant's actions constitute a violation of the Plaintiff's right to a trial by jury, equal protection of the law, and due process, resulting in substantial emotional and financial harm to the Plaintiff." [2] *Id.* The complaint does not include any other factual allegations.

[1]    The Court takes judicial notice Susan Hamlin Nasci, Esq., is a New York Family Court Support Magistrate. *See* https://ww2.nycourts.gov/courts/5jd/onondaga/index.shtml (last visited Mar. 13, 2024).

[2]    Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

As relief, Plaintiff seeks: (1) $50,000 in actual damages "for medical conditions and lost income due to severe anxiety and reduced work capacity"; (2) $50,000 in compensatory damages for emotional distress "caused by the estrangement from the Plaintiff's son"; (3) $50,000 in punitive damages to "penalize the Defendant and deter similar future misconduct"; (4) "the immediate dismissal" of the "fraudulent child support financial order imposed upon the Plaintiff"; and (5) the "return of all payments made by the Plaintiff under the fraudulent child support order up to the present day." *Id.* at 2.


## II. IFP APPLICATION

Plaintiff declares in his IFP application that he is unable to pay the statutory filing fee to commence this action. (Dkt. No. 2.) After reviewing his application, this Court finds Plaintiff is financially eligible for IFP status. According, Plaintiff's IFP application is granted. [3]

3    Plaintiff is advised that he will still be required to pay any costs and fees that he may incur in this matter, including, but not limited to, any copying fees or witness fees.

## III. STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion thereof, if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

"An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

**\*2** To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal, 556 U.S. at 678.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

## IV. ANALYSIS

Liberally construed, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) ("42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights."). 4

4    Plaintiff also claims Defendant, "acting as a non-judicial court employee without proper authority and jurisdiction, has trespassed upon the Plaintiff's right, specifically under 18 USC Section 242." (Dkt. No. 1 at 1.) However, 18 U.S.C. § 242 is a criminal statute, which does not give rise to civil liability or authorize a private right of action. *See Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (holding there is "no private right of action" under 18 U.S.C. § 242).

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff

must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Having carefully reviewed Plaintiff's complaint and for the reasons discussed below, the Court recommends dismissal of complaint without prejudice and with leave to amend.

### A. Failure to State a Claim

The complaint alleges Defendant denied Plaintiff his "right to a trial by jury, equal protection of the law, and due process." (Dkt. No. 1 at 1.) However, Plaintiff has failed to adequately set forth sufficient factual content to allow this Court to reasonably infer Defendant was personally involved and liable for the alleged unconstitutional conduct. *See Iqbal*, 556 U.S. at 678. Specifically, he has failed to set forth a short and plain statement stating what Defendant did to him, when she did it, and how he was injured. *See id.*; *see also* Fed. R. Civ. P. 8(a)(2). Absent these basic details, Plaintiff's complaint has failed to give Defendant fair notice of what his claims are, and the Court is left with "an unadorned, the-defendant-harmed-me accusation." *See Iqbal*, 556 U.S. at 678.

**\*3** Therefore, it is recommended that Plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a).

### B. Judicial Immunity

Judges are immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action "outside" his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

"New York Family Court Support Magistrates, as New York State judicial officers, enjoy this judicial immunity, when presiding over child support proceedings." [5] *Cora v. Wright*, No. 1:24-CV-0263, 2024 WL 450247, at \*2 (S.D.N.Y. Feb. 5, 2024) (citing *Arce v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order)); *see, e.g., Phillips v. Wagner*, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092, at \*4 (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims under § 1983 against Defendant Wagner, who acted as the support magistrate judge, are barred under the doctrine of judicial immunity."), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

[5]     According to the website maintained by the New York State Unified Court System, "[a] 'Support Magistrate' conducts the hearing, taking testimony from both sides concerning their income and expenses and the cost of supporting the child. The parties can present evidence and witnesses and cross-examine each other and the witnesses. The Support Magistrate calculates how much support the non-custodial parent must pay to the parent with custody, and sets a schedule for regular payments." *See* https://ww2.nycourts.gov/courts/5jd/family/support.shtml (last visited Mar. 13, 2024).

While not entirely clear, Plaintiff seems to assert claims for damages and injunctive relief pursuant to Section 1983 against Defendant, a Support Magistrate, who presumably presided over the child support proceedings that resulted in the alleged "fraudulent child support financial order imposed upon the Plaintiff." (Dkt. No. 1 at 1-2.) Plaintiff, however, fails to allege any

facts showing Defendant acted beyond the scope of her judicial responsibilities or outside her jurisdiction. *See Mireles*, 509 U.S. at 11-12. Moreover, Plaintiff does not allege any facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable.

**\*4** Thus, insofar as Plaintiff sues Defendant "for acts arising out of, or related to, individual cases before [her]," Defendant would be entitled to judicial immunity. [6] *Bliven*, 579 F.3d at 210; *see* 28 U.S.C. § 1915(e)(2)(b)(iii); *see also Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

[6]     Defendant also would be protected under the doctrine of sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). That holding was recently reaffirmed by the Second Circuit. *Bythewood v. New York*, No. 22-2542-cv, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) ("The New York State Unified Court System is 'unquestionably an arm of the state' that shares in New York's immunity to suit.").

**C. Jurisdiction**

Although the nature of Plaintiff's complaint makes it difficult to precisely determine which doctrines apply, based on the relief Plaintiff seeks, this Court may lack jurisdiction to hear Plaintiff's claims and/or it should likely abstain from hearing Plaintiff's claims.

Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Sims v. Kaufman*, No. 23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024) (citing *Legister v. Radowitz*, No. 1:20-CV-9330, 2020 WL 7405672, at *3 (S.D.N.Y. Dec. 16, 2020)) ("A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013))).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted). [7]

[7]     To the extent Plaintiff is asking the Court to grant injunctive and declaratory relief with respect to ongoing Family Court proceedings, including any post-judgment proceedings, the Court must likely abstain from hearing those claims under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971).

**\*5** Plaintiff's claims also appear to implicate the domestic relations abstention doctrine, which requires federal courts to abstain from exercising federal question jurisdiction of domestic relations issues such as divorce, child support payments and child custody. *See Deem v. DiMella-Deem*, 941 F.3d 618, 621-24 (2d Cir. 2019) (holding that federal district courts must abstain from exercising federal-question jurisdiction of claims involving domestic-relations issues); *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (holding that where a federal district court is "asked to grant a divorce or annulment, determine support payments, or award custody of a child," the court should abstain from exercising its jurisdiction of such claims if "there is no obstacle to their full and fair determination in [the] state courts.") (internal quotation marks omitted); *see, e.g., Simmons*

*v. NYS Dep't of Soc. Servs.*, No. 19-CV-3633, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("[C]alculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing.").

## V. OPPORTUNITY TO AMEND

As discussed above, the Court finds Plaintiff's complaint is subject to dismissal failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a). Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Although the Court has serious doubts about whether Plaintiff can amend to assert an actionable claim given the various jurisdictional and immunity principles discussed above, since this is Plaintiff's initial complaint and out of an abundance of caution, the Court recommends that Plaintiff be given an opportunity to amend to cure the deficiencies identified above.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. [8] Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his original complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

[8]   "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

## VI. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. [9] **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[9]   If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**\*6  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1142144

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3158645
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. PORTER, III, Plaintiff,

v.

Susan Hamlin NASCI, Defendant.

5:24-CV-0033 (GTS/TWD)

|

Signed June 25, 2024

**Attorneys and Law Firms**

JOHN A. PORTER, III, Plaintiff, Pro Se, 175 Parkside Ave, Syracuse, New York 13207.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by John A. Porter, III ("Plaintiff") against Susan Hamlin Nasci, Support Magistrate employed by the Onondaga County Family Court ("Defendant"), is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint be *sua sponte* dismissed with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B), and Plaintiff's Objection to the Report-Recommendation and Amended Complaint. (Dkt. Nos. 4, 5.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no error in the Report-Recommendation, clear or otherwise: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*See generally* Dkt. No. 4.) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. To those reasons, the Court adds only two points.

First, even when construed liberally, Plaintiff's "Objection" fails to contain a *specific* challenge to a finding or conclusion contained in the Report-Recommendation. (See generally Dkt. No. 5.) As a result, the "challenged" portions of the Report-Recommendation are entitled to only a clear-error review, [1] which they easily survive. In the alternative, the Court finds that those portions of the Report-Recommendation survive a *de novo* review.

[1]     When no specific challenge is made to a magistrate judge's report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

Second, rather than file a specific challenge to the Report-Recommendation, Plaintiff has filed an Amended Complaint. (Dkt. No. 5.) This haste to litigate has complicated matters because, even assuming Plaintiff had an absolute right to file such an Amended Complaint under Fed. R. Civ. P. 15(a)(1) despite that he had not yet served his Complaint, [2] an amended complaint supersedes an original complaint in all respects. [3] This means that, potentially, Plaintiff's Amended Complaint has partially mooted Magistrate Judge Dancks' Report-Recommendation, which analyzed Plaintiff's *original* Complaint.

[2]   Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course *within* ... 21 days after serving it ...." Fed. R. Civ. P. 15(a)(1)(A) (emphasis added). Here, Plaintiff never served his Complaint; thus, he was arguably not yet *within* the 21-day window in which he could properly file an Amended Complaint as a matter of course. *Compare Morris v. New York State Gaming Comm'n*, 18-CV-0384, 2019 WL 2423716, at *4 (W.D.N.Y. March 14, 2019) ("Because Plaintiff never served the original Complaint, the 21-day time limit to file an amended complaint under Rule 15(a)(1)(A) never *commenced*.") (emphasis added) *with Henderson v. Wells Fargo Bank, NA*, 13-CV-0378, 2015 WL 630438, at *2 (D. Conn. Feb. 13, 2015) ("Fed. R. Civ. P. 15(a) provides that a 'party may amend its pleading once as a matter of course within ... 21 days after serving it.' Because Plaintiff has not yet served Defendant with the complaint, her motion is granted although unnecessary because leave of the Court is not required.").

[3]   *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."); 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1476, at 556-57 (2d ed. 1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."); *cf.* N.D.N.Y. L.R. 7.1(a)(4) ("[T]he proposed amended pleading ... will supersede the pleading sought to be amended in all respects.").

**2**  Out of a desire for judicial efficiency, the Court is tempted to apply the recommendations in the Report-Recommendation to Plaintiff's Amended Complaint. However, the Court is mindful of the Second Circuit's admonition that a *pro se* plaintiff's request to amend his complaint when a motion to dismiss is pending should be denied only without prejudice, or perhaps stayed until he has had the benefit of the district court's ruling on the motion to dismiss. [4]

[4]   *See Cresci v. Mohawk Valley Community College*, 693 F. App'x 21, 25 (2d Cir. June 2, 2017) ("The court's criticism of Cresci for failure to submit a proposed amended complaint before learning whether, and in what respects, the court would find deficiencies was unjustified, and the court's denial of leave to replead, simultaneously with its decision that the complaint was defective, effectively deprived Cresci of a reasonable opportunity to seek leave to amend.").

As a result, the Court has chosen to apply Magistrate Judge Dancks' Report-Recommendation to Plaintiff's original Complaint while deeming Plaintiff's "Amended Complaint" (Dkt. No. 5) as a *proposed* Amended Complaint, and holding that proposed Amended Complaint in abeyance pending confirmation from him that it is indeed the Amended Complaint on which he wishes to proceed.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 4) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No 1) shall be **DISMISSED with prejudice UNLESS, within THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in the Report-Recommendation; and it is further

**ORDERED** that, if Plaintiff wishes his proposed Amended Complaint (Dkt. No. 5) to serve as that Amended Complaint, he shall notify the Court of that fact in writing within thirty days of the date of this Decision and Order; and it is further

**ORDERED** that, should Plaintiff file a timely Amended Complaint (by either of the two methods identified in the two prior paragraphs), it shall be automatically referred to Magistrate Judge Dancks for her review.

**All Citations**

Slip Copy, 2024 WL 3158645

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3460788

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Annamay SHIBLEY, et al., Plaintiffs,

v.

Jennifer BIXLEROND, et al., Defendants.

6:24-cv-0722 (BKS/TWD)

|

Signed July 16, 2024

**Attorneys and Law Firms**

ANNAMAY SHIBLEY, Plaintiff, pro se, 2452 Broad Street, Apt. 3, Frankfort, NY 13340.

CHRISTOPHER WHEELER, SR., Plaintiff, pro se, 2452 Broad Street, Apt. 3, Frankfort, NY 13340.

### REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the undersigned for review a complaint submitted by *pro se* plaintiffs Annamay Shibley and Christopher Wheeler, Sr. ("Plaintiffs"), together with two applications to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 3, 4. For the reasons set forth below, the Court recommends the complaint be dismissed.

## II. IFP APPLICATIONS

Plaintiffs have not paid the statutory filing fee for this action and seek leave to proceed IFP. Dkt. Nos. 3, 4. Upon review, the Plaintiffs' IFP applications demonstrate economic need. *See id.* Therefore, Plaintiffs are granted permission to proceed IFP.

## III. COMPLAINT

Plaintiffs commenced the instant action utilizing the Court's form complaint for civil rights actions, asserting claims under 42 U.S.C. § 1983. *See* Dkt. No. 1 at 3. [1] The complaint lists four defendants: "Jennifer bixlerond" of the Oneida County Sheriff's Department; [2] the Department of Social Services ("DSS"); the Mohawk Valley Community Action Agency; and Heidi Garber. *Id.* at 2-3.

[1]    Citations to Plaintiffs' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2]    The Court notes, while Plaintiffs listed "Jennifer bixlerond" as "Defendant No. 1" on the second page of the complaint, *see* Dkt. No. 1 at 2, in a later portion of the same document, *see* Dkt. No. 1 at 4, and on both IFP applications, *see generally*, Dkt. Nos. 3, 4, Plaintiffs appear to refer to the same individual as "Jennifer Bixler."

Plaintiff Annamay Shibley states, [3] on February 2, 2021, "2 of my children were taken by CPS." *Id.* at 8. CPS accused her of "abusing my children even though the babysitter named Heidi garber was the one that abused my children and amidded it to

CPS." *Id.* "CPS wanted the babysitter my boyfriend and myself to take a lie detector test." *Id.* Garber "refused to take a test" but Shibley and her boyfriend agreed to take the test at the Oneida County Jail. *Id.* After she completed the test,

> they said I failed the test but when the officer showed me the test I did not see where I failed the test. But they still arrested me and I spent one night in jail but when I went to court the next day the judge released me and told me that there was not enough evidence to prove I did anything wrong.

*Id.* She later learned "the charges were dismissed and sealed." *Id.*

[3]    As discussed in greater detail below, the complaint is signed only by Annamay Shibley. *See* Dkt. No. 1 at 7.

Shibley avers "CPS did not have a warrant to remove my children from my care. I did not get a court date for the removal order of my children until a week and a half after my children were already removed." *Id.* She states she has "done everything that the cps workers wanted me to do" including "mental health councling, parenting class, anger management class, domestic violence classes and also find better housing for myself and my children." *Id.* Plaintiff also "had 2 more children" after the first two were removed from her home "and they did not have a warrant to remove them children both from St. Luke's hospital the days that they were born." *Id.*

**\*2** She has not abused any of her children, and seeks to have the children returned to her home, arguing "CPS should have never taken my children after they got the confession out of the babysitter." *Id.* at 9. Further, she "would like the babysitter held accountable for her actions." *Id.* Additionally, in October of 2023, "Laurie Ellis who used to work for Onidea County dss" entered Shibley's residence "without knocking and also after numerous times I told her she was not welcome into my house." *Id.* Plaintiff "had to call the police and make a police report on her once I made a police report she took herself off of my family court case." *Id.*

Shibley "was suppost to have home visits back in 2022 and they took them away all because someone lied and said that I took inappropite pictures of one of my children during a visit and also abused my child during a visit but yet that never happened." *Id.* The visit during which the alleged abuse occurred "was conducted at The House of good Shepard and I had many staff in and out of the room that cps tried to say it happened at." *Id.* Additionally, DSS did not have custody of the child Plaintiff allegedly abused at the time, as the child's biological father had custody. *Id.* "He had custody and then abandoned her and left her with his ex girlfriend. I then fought like no tomorrow to have the foster parents gain custody of her so she was back with her siblings and I now feel like that was a big mistake." *Id.*

From the day Shibley's four children entered foster care, the foster parents allowed the children to be hurt and have failed to contact her "until days after or not being fulted for it." *Id.* For example, one of the children "was bitten by a dog and could have been blind and they still have the dog, they want to get rid of the dog and that they have the dog locked up away from the kids." *Id.* However, it is "very unlikely that they are able to keep that dog away far from 11 kids all under 10 years old!" *Id.*

"DSS has not done everything to make sure I can get my children back, I think there goal for all children around the world is to human traffic them. They have been wanting to terminate my rights from the day they wrongfully took my children!" *Id.* at 10. Furthermore, "it's wrong that Christopher Wheeler, who has raised" two of the children from August 23, 2019, until February 24, 2021, "with out a problem is not allowed to see or talk to them just because he is a registered sex offender but yet cps had no problems with my children being in his care from Feb 11th of 2020 til they were removed." *Id.* "We had several cps cases called on us between that time and IF cps believed they were in danger why didn't cps remove the kids then." *Id.*

Plaintiff seeks to "have the phone records from cps and the House of good shepard pulled and listened to." *Id.* She states "I just want to be able to get my children back and I want to get paid for my pain and suffering I have been through. I have ptsd from all of this nonsense!" *Id.*

## IV. STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

**\*3** To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

### A. Section 1983

Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y.) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To state a valid claim under § 1983, a plaintiff must allege the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Even affording the complaint a liberal construction, Plaintiffs have failed to state a claim under § 1983 against any of the named defendants.

### 1. Oneida County Sheriff Jennifer Bixlerond

The first defendant identified in the Plaintiffs' complaint is Jennifer Bixlerond. Dkt. No. 1 at 2. Plaintiffs indicate Bixlerond is employed by the Oneida County Sheriff's Department and they seek to hold her liable in her official capacity. *See id.* Plaintiffs state "Jennifer Bixler was personally involved in the wrongful actions of" two of Shibley's children "being removed from my care." *Id.* at 4.

"[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005); *see also, e.g.*, *Polinski v. Oneida Cnty. Sheriff*, No. 6:23-CV-0316 (DNH/ML), 2023 WL 2988753, at *5 (N.D.N.Y. Apr. 18, 2023) ("A claim against [an] Oneida County Sheriff in his official capacity, is essentially a suit against the Oneida County Sheriff's Department.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007)), *report and recommendation adopted*, 2023 WL 3344060 (N.D.N.Y. May 10, 2023), *appeal dismissed*, No. 23-867, 2023 WL 8357375 (2d Cir. Oct. 12, 2023). However, a municipality such as Oneida County may be "liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)) (additional citation omitted).

**\*4** "The policy or custom need not be memorialized in a specific rule or regulation," *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citations omitted), and "may be pronounced or tacit and reflected in either action or inaction." *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). Municipal liability under *Monell* may be established by way of:

> (1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to "deliberate indifference" to the rights of those who come into contact with the inadequately trained or supervised municipal employees.

*Crawley v. City of Syracuse*, 496 F. Supp. 4d 718, 729 (N.D.N.Y. 2020) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (Summary Order)) (additional citation omitted). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 590 (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

In the instant complaint, Plaintiffs have failed to identify any municipal policy or custom or allege facts plausibly suggesting a basis for municipal liability. Therefore, they have failed to state a viable *Monell* claim, and dismissal as to Bixlerond is warranted. *See, e.g.*, *Polinski*, 2023 WL 2988753, at *5-7.

### 2. Department of Social Services, Grade B Supervisor

The complaint next identifies as a defendant the "Department of Social Services." Dkt. No. 1 at 2. Yet, "Grade b Supervisor" is listed as the department's "Job or Title" and the complaint references "Grade B supervisor ... Laurie Ellis." *Id.* at 4; *see also id.* at 9. Irrespective of whether Plaintiffs intend to pursue a claim against the Oneida County DSS or Ellis in her official capacity, however, the complaint fails to state a viable claim.

"Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit ... and no claims lie directly against the Department." *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) (citations omitted). Further, as explained above, Plaintiffs have failed to allege facts plausibly suggesting a basis for municipal liability as to Oneida County. *See supra* Section V.A.1. Therefore, to the extent Plaintiffs intend to state a claim against the Oneida County DSS, dismissal is warranted. *See, e.g., White v. Syracuse Police Dep't*, No. 5:18-CV-1471 (GTS/DEP), 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019)* ("I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the ... [municipality] in place of the" municipal department, however, because the "plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the" municipality, "I recommend dismissal of plaintiff's claims asserted against the" department.), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019).

*5 Alternatively, to the extent Plaintiffs intended to state a claim against Oneida County DSS Supervisor Laurie Ellis in her official capacity, as explained above, "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon*, 404 F.3d at 687. Therefore, the Plaintiffs' failure to identify a basis for municipal liability as to Oneida County also precludes a viable claim against the County DSS Supervisor in her official capacity. *See supra* Section V.A.1; *see also, e.g., Welch v. Fitzgerald*, No. 5:18-CV-0461 (MAD/ATB), 2018 WL 6173796, at *6 (N.D.N.Y. May 16, 2018)*, *report and recommendation adopted*, 2018 WL 4795759 (N.D.N.Y. Oct. 4, 2018). Additionally, Laurie Ellis "is not named or identified in the caption or list of parties" as a defendant, therefore, any claim against her in her individual or official capacity would be subject to dismissal for failure to state a claim. *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 125 (N.D.N.Y. 2023).

### 3. Mohawk Valley Community Action Agency

The third defendant listed in the complaint is the Mohawk Valley Community Action Agency daycare center. Dkt. No. 1 at 3. Plaintiffs seek to hold this defendant liable in its official capacity. *See id.* However, Plaintiffs have not alleged the entity is a state actor for purposes of § 1983, nor have they asserted any facts which would permit the Court to draw that inference. *See id.* at 3-10. Indeed, the sole factual assertion concerning this defendant is that "[t]here were multiple times that Mohawk Valley Community Action Agency were involved in calling CPS to have my children removed." *Id.* at 4. Accordingly, the undersigned recommends dismissal of the complaint as to the Mohawk Valley Community Action Agency. *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (explaining, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.") (citation omitted); *see also, e.g., Burgdorf v. Betsy Ross Nursing & Rehab. Ctr. Inc.*, No. 6:22-CV-0987 (DNH/ATB), 2023 WL 112092, at *5 (N.D.N.Y. Jan. 5, 2023) (recommending dismissal of § 1983 claims against three entities where the plaintiff had "not alleged any facts suggesting that these entities are state actors under any of the aforementioned exceptions, or describing how their actions are otherwise fairly attributable to the state.") (internal quotations omitted), *report and recommendation adopted*, 2023 WL 418045 (N.D.N.Y. Jan. 26, 2023).

### 4. Heidi Garber

The final defendant listed in the complaint is Heidi Garber, in her individual capacity. Dkt. No. 1 at 3. Plaintiffs state Garber worked as a babysitter, *see id.*, and allege she "abused" two of the children, admitted such conduct to Plaintiff(s), and "refused to take" a "lie detector test" regarding the incident, *id.* at 5, 8. However, Plaintiffs do not assert any facts from which the Court could conclude Garber is a state actor or that her alleged actions are fairly attributable to the state. Therefore, the undersigned

2024 WL 3460788

recommends dismissal of the complaint as to Heidi Garber. *See supra* Section V.A.1; *see also Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013) (Summary Order) ("private individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law.").

**B.** *Younger* **Abstention,** [4] *Rooker-Feldman*, [5] **and the Domestic Relations Exception**

[4]      *See generally, Younger v. Harris*, 401 U.S. 37 (1971).

[5]      *See generally, District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

**\*6** Next, from what the undersigned can glean, Plaintiffs seek both monetary damages and custody of Shibley's four children. *See* Dkt. No. 1 at 6, 8-10. Although the nature of Plaintiffs' complaint makes it difficult to determine which of the following doctrines apply, based on the relief sought, this Court likely lacks jurisdiction to hear and/or should abstain from hearing the Plaintiffs' claims.

"[I]n the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, No. 1:22-CV-0581 (DNH/TWD), 2022 WL 2341420, at \*6 (N.D.N.Y. June 29, 2022) (citing *Younger v. Harris*, 401 U.S. 37 (1971)) (additional citation omitted), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id.* (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)).

Courts in this circuit have found these conditions to be satisfied in matters involving issues of child custody. *See, e.g., Walker*, 2022 WL 2341420, at \*6 (collecting cases applying the *Younger* abstention doctrine in the context of child custody disputes). Therefore, to the extent Plaintiffs' claims involve a "custody dispute [that] is continuing in New York State Family Court, this Court should abstain from interfering with that process." *Id.*; *see also Terpening v. McGinty*, No. 1:21-CV-1215 (GTS/CFH), 2022 WL 17418268, at \*6 (N.D.N.Y. Oct. 5, 2022) ("It is unclear whether there are pending family court proceedings in which plaintiff seeks the Court's intervention .... However, 'the heart of this case is a child custody dispute, a matter rightfully reserved for state courts.' ") (citing *McKnight v. Middleton*, 699 F. Supp. 2d 507, 520 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011)) (additional citation omitted), *report and recommendation adopted*, 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022).

Alternatively, to the extent the Plaintiffs' claims concern a state court proceeding which has concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See, e.g., Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at \*10 (N.D.N.Y. Jan. 26, 2022); *Walker*, 2022 WL 2341420, at \*6. "Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment." *Porter v. Nasci*, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at \*4 (N.D.N.Y. Mar. 15, 2024) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005)) (additional citations omitted), *report and recommendation adopted*, 2024 WL 3158645 (N.D.N.Y. June 25, 2024). "The doctrine also bars the federal court from considering claims that are 'inextricably intertwined' with a prior state court determination." *Amato*, 2022 WL 226798, at \*10 (citing *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at \*3 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016)) (additional citation omitted). [6]

[6]      *See also, Amato*, 2022 WL 226798, at \*11 (explaining, "[t]he *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court

to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered.") (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)).

**\*7** "There is no question that *Rooker-Feldman* bars ... challenges to" a state "family court's decisions regarding child custody ...." *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002). Accordingly, to the extent Plaintiffs seek, in effect, an appeal from an unfavorable state court custody judgment, any such claim is barred. *See Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *Walker*, 2022 WL 2341420, at \*6.

Furthermore, under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside of this Court's jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *see also*, *Cruz v. New York*, No. 5:17-CV-0510 (BKS/TWD), 2017 WL 6021838, at \*7 (N.D.N.Y. Oct. 27, 2017) ("Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.") (collecting cases), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017). "Therefore, insofar as the present *pro se* Complaint seeks the restoration of custody over her son, the federal courts lack jurisdiction to hear that claim, and it should be dismissed." *Reeves v. Dep't of Children, Youth & Families*, No. 1:20-CV-0987 (BKS/DJS), 2020 WL 5898866, at \*3 (N.D.N.Y. Sept. 4, 2020) (citation omitted), *report and recommendation adopted*, 2020 WL 5891564 (N.D.N.Y. Oct. 5, 2020).

### C. Additional Deficiencies

Finally, notwithstanding the aforementioned issues, the complaint suffers from additional defects. First, while Christopher Wheeler, Sr., is listed as a plaintiff and has submitted an IFP application, he has not signed the compliant. *See generally*, Dkt. Nos. 1, 4. Thus, the complaint violates Federal Rule of Civil Procedure 11(a) and Northern District of New York Local Rule 10.1(c)(2). *See, e.g.*, *Boyle v. Town of Hammond*, No. 7:08-CV-1065 (TJM/GJD), 2008 WL 11416992, at \*1 (N.D.N.Y. Oct. 24, 2008) (explaining, *pro se* plaintiff "James F. Boyle may not represent any of the other individuals that he lists as plaintiffs. Those individuals could have signed the complaint and appeared as *pro se* plaintiffs, but James F. Boyle may not sign the complaint for them or proceed on their behalf."), *aff'd*, 375 F. App'x 85 (2d Cir. 2010); *Goode v. Halderman*, No. 3:11-CV-1461, 2011 WL 6122960, at \*1 n.1 (D. Or. Dec. 9, 2011) ("the Complaint, while purportedly brought by [two individuals], was signed only by [one of the plaintiffs] .... a *pro se* Plaintiff may not bring an action on behalf of another; instead, both *pro se* Plaintiffs must sign every pleading or other document submitted to the Court.") (citing Fed. R. Civ. P. 11(a)); N.D.N.Y. L.R. 10(c)(2).

The complaint also falls short of the pleading requirements set forth in Federal Rules 8 and 10. Rule 8 requires, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). Each statement must be "simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), and provide "fair notice of the claims asserted." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (Summary Order) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). "A complaint may be dismissed under Rule 8 if it 'is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.* (quoting *Simmons*, 49 F.3d at 86 (2d Cir. 1995)).

**\*8** Moreover, Rule 10 provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The Rule's purpose is "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 1:22-CV-1248 (MAD/DJS), 2022 WL 17517312, at \*2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense, "provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims[,]" and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). Therefore, dismissal of the instant complaint on this basis would also be appropriate. *See, e.g.*, *Griffith v. New York State*, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at \*4 (N.D.N.Y. Mar. 20, 2024) (recommending "dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ.

2024 WL 3460788

P. and because Plaintiff's Section 1983 claim or claims against Defendant are entirely unclear."), *report and recommendation adopted*, No. 5:23-CV-1266, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024).

### D. Leave to Amend

Although the Court has serious doubts, it is not clear whether Plaintiffs could assert a cognizable cause of action against the Defendants by way of a better pleading. Therefore, out of an abundance of caution and in deference to the Plaintiffs' *pro se* status, the undersigned recommends the action be dismissed without prejudice and with leave to amend. If Plaintiffs chose to avail themselves of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which they rely to support any legal claims asserted, which Plaintiffs have a legal right to pursue, and over which this Court has jurisdiction. Of course, Plaintiffs may also pursue their claims in state court if appropriate.

### VI. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiffs' motions to proceed IFP (Dkt. Nos. 3, 4) are **GRANTED**, [7] and it is further

[7]    Although their applications to proceed IFP have been granted, Plaintiffs will still be required to pay fees that they may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

**RECOMMENDED** that the complaint be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiffs a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[8]    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**\*9  IT IS SO ORDERED.**

### All Citations

Slip Copy, 2024 WL 3460788

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4203975

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Annamay SHIBLEY and Christopher Wheeler, Sr., Plaintiffs,

v.

Jennifer BIXLEROND, Department of Social Services, Mohawk

Valley Community Action Agency, and Heidi Garber., Defendants.

6:24-cv-722 (BKS/TWD)

|

Signed September 16, 2024

**Attorneys and Law Firms**

Plaintiffs pro se: Annamay Shibley, Christopher Wheeler, Sr., Frankfort, NY 13340.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

**\*1** Plaintiffs Annamay Shibley and Christopher Wheeler, Sr. commenced this proceeding under 42 U.S.C. § 1983, and sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. Nos. 1, 3,4). This matter was referred to United States Magistrate Judge Therese Wiley Dancks who, on July 16, 2024, granted Plaintiffs' applications to proceed IFP, and issued a Report-Recommendation, recommending that Plaintiffs' complaint be dismissed without prejudice and with leave to amend. (Dkt. No. 10). Plaintiffs were informed that they had fourteen days within which to file written objections to the report under 28 U.S.C. § 636(b)(1), and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.* at 12-13). On July 29, 2024, the Court issued an Order giving Plaintiffs an extension of time to file objections to the Report-Recommendation. (Dkt. No. 12). No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue,* 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Dancks's Report-Recommendation (Dkt. No. 10) is **ADOPTED**; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED** without prejudice and with leave to amend; and it is further

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiffs file a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiffs fail to file a timely amended complaint, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiffs in accordance with the Local Rules.

2024 WL 4203975

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4203975

---

**End of Document**                                                                                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

2022 WL 16646531
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James P. SCOTT, Plaintiff,

v.

Dinah M. CROSSWAY, Esq., et al., Defendants.

No. 1:22-CV-500 (BKS/CFH)

|

Signed November 3, 2022

**Attorneys and Law Firms**

James P. Scott, 8815 Frostwood Court, Tampa, Florida 33634, Plaintiff pro se.

### REPORT-RECOMMENDATION AND ORDER

Christian F. Hummel, United States Magistrate Judge

### I. In Forma Pauperis

**\*1** Plaintiff pro se James P. Scott ("plaintiff") purported to commence this action on May 13, 2022, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted a motion to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP motion and determines that he financially qualifies to proceed IFP for the purpose of filing. [1]

[1]    Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

### II. Initial Review

### A. Legal Standard

Section 1915 [2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

[2]    The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Scott v. Crossway, Not Reported in Fed. Supp. (2022)
Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 34 of 84
2022 WL 16646531

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Pro se litigants are "not exempt ... from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

**\*2** Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Complaint

Plaintiff purports to bring this action against Dinah M. Crossway, Esq., ("Attorney Crossway") Counsel for the New York State Department of Motor Vehicles ("DMV"); "Unknown State Actors" in the DMV; and Judge Frank P. Milano of the New York State Court of Claims. Compl. at 2. In 2017, while residing in Florida, plaintiff was informed by the Florida DMV that his driver's license was being temporarily suspended because of "an ineligible status reported to the National Driver Registry" by the New York State DMV's Driver Improvement Unit. Id. at 3. Plaintiff was told that his Florida license would be suspended until

New York State removed the ineligible status. See id. Plaintiff "had not driven in [New York] since the year 2005 and had no knowledge of any issues regarding his [New York] driving privileges." Id. Plaintiff "file[d] an Order to Show Cause and Verified Petition in Albany County Supreme Court seeking primary relief of the removal of the hold in the National Driver Registry [and] ... requested secondary relief of monetary damages in the proceeding." Id. Plaintiff submitted a "certified letter" to the DMV "demanding it remove the hold under his name in the National Driver Registry. Plaintiff enclosed a copy of his Florida Driving Driving Abstract certified by the Director of Motor Vehicles in the State of Florida." Id. at 4. Plaintiff states that, "[t]his abstract, which is the only valid driving record in this case, did not show any driving infractions in [New York] after the year 2005." Id.

**\*3** On an unspecified date, prior to or during an Article 78 proceeding, plaintiff contends that "Unknown State Actors" in the DMV falsified documents related to his driving record "for the purpose of inducing the court to dismiss the petition for relief." Compl. at 3-4. "The [ ] Article 78 proceeding Decision and Order denied the state agency's motion to dismiss and [p]laintiff's secondary relief for monetary damages with the Supreme Court citing its lack of jurisdiction to award in the special proceeding." Id. at 3. Plaintiff asserts that during the Article 78 proceeding, Attorney Crossway "committed the act of civil fraud by providing false statements and falsified records and/or documents pertaining to [p]laintiff's New York [S]tate driving records ... for the purpose of inducing the court to dismiss [p]laintiff's petition for relief." Id. at 4. Attorney Crossway "provided affirmations in the Article 78 stating that she had not only had personal knowledge of the case as a thirteen-year staff attorney for the NYS DMV Driver Improvement Unit, but had also consulted with unnamed authorities in the NYS DMV and had reviewed the records provided by them." Id. Plaintiff contends that Attorney Crossway was "aware that [p]laintiff did not have any court cases, open revocations or relicensing applications in [New York] when she made these false statements." Id.

"The case ended in a final Judgment entered on April 15, 2019, with [p]laintiff prevailing. The Supreme Court ordered the Driver Improvement Unit to restore [p]laintiff's [New York] driving privileges forthwith. On May 15, 2019, the state agency's appeals period expired and it restored [New York] driving privileges." Compl. at 3. "Plaintiff served Notice of Intention to File Claim on the [New York State] Attorney General's Office on April 26, 2019, 11 days after the final Judgment was entered. The Claim itself was not filed until the state agency complied with the court order to remove the hold from the National Driver Registry." Id.

In adjudicating plaintiff's Court of Claims case, he asserts that Judge Milano "violated [p]laintiff's due process by unlawfully dismissing the claim, preventing him from seeking compensation for losses incurred from the wrongful actions against him." Compl. at 4. Judge Milano's "Decision and Order did not decide on the arguments brought forth by the defense in its motion to dismiss but instead was effectively a review of the administrative agency's actions, which the Court of Claims has no jurisdiction over." Id. at 5. Plaintiff states that Judge Milano's decision contradicted the Supreme Court's "Judgment determining the state agency's actions to be arbitrary and capricious and an error of law. Judge Milano did not address any of the issues settled by the Supreme Court." Id. He also asserts that "[t]he Supreme Court, not the Court of Claims, is the court of original jurisdiction or court of original instance in this case." Id. Plaintiff contends that prior to filing the present complaint, he "exhausted all remedies in [New York State] courts by appealing Judge Milano's Decision and Order to the Third Department and motioning for leave to appeal in the Court of Appeals." Id.

Plaintiff seeks four million dollars "for the wrongful deprivation of his property and for civil fraud committed by the unknown state actors and their counsel Dinah M. Crossway, Esq." Compl. at 6. Plaintiff "does not request relief in the form of monetary damages from Honorable Frank P. Milano in this complaint, but instead asks the Court for relief of all orders made in violation of law, that due process be allowed, and the Court issue further relief as it deems appropriate." Id.

## C. Analysis

Plaintiff's complaint can be construed as raising Fourteenth Amendment substantive and procedural due process claims brought pursuant to 42 U.S.C. § 1983.

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 36 of 84

2022 WL 16646531

### 1. The Rooker-Feldman Doctrine

As an initial matter, the Court lacks subject matter jurisdiction over the claims against Judge Milano under the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). "The Rooker-Feldman doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." Hachamovitch v. DeBuono, 159 F.3d 687, 693 (2d Cir. 1998). For the Rooker-Feldman doctrine to apply: (1) "the federal-court plaintiff must have lost in state court[ ]"; (2) "the plaintiff must complain[ ] of injuries caused by [a] state-court judgment[ ]"; (3) "the plaintiff must invit[e] district court review and rejection of [that] judgment[ ]"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced[.]" Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (citations and quotation marks omitted).

**\*4** All four elements are met here: (1) plaintiff's claim seeking monetary damages for the DMV's actions in the Court of Claims was dismissed by Judge Milano—i.e., he "lost" in state court; (2) plaintiff states that he was "wrongfully denied" the opportunity to seek compensation for the DMV's actions because of the dismissal; (3) he asks this Court for relief from "all orders made in violation of law [and] that due process be allowed"; and (4) Judge Milano's decision was rendered prior to plaintiff filing the present action. Compl. at 6; see also Scott v. State of New York, No. 2019-041-061, slip op. at 1-4 (Ct. Cl. Sept. 30, 2019).[3] Accordingly, the Court is barred from reviewing plaintiff's complaint against Judge Milano and it is recommended that the claim against Judge Milano be dismissed without prejudice. See Fraccola v. Grow, 670 F. App'x 34, 35 (2d Cir. 2016) (summary order) (internal citation omitted) ("The Rooker-Feldman doctrine precludes district court review as a matter of subject matter jurisdiction. When a court lacks subject matter jurisdiction, it lacks the power to dismiss with prejudice[.]").

[3]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff. New York Court of Claims decisions can be searched online through the following domain: https://ww2.nycourts.gov/COURTS/nyscourtofclaims/overview-decisions.shtml.

The undersigned comes to a different conclusion as to Attorney Crossway and the "Unknown State Actors." The Second Circuit has distinguished between complaints that "alleged injuries were caused by state-court [a] judgment[ ]" and those that complain of "third party's actions [that were] simply ratified, acquiesced in, or left unpunished by it." Sung Cho v. City of New York, 910 F.3d 639, 645-46 (2d Cir. 2018) (quoting Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005)). The former is barred by the Rooker-Feldman doctrine and the latter is not. See id. at 645-46. Plaintiff's complaint against Attorney Crossway and the "Unknown State Actors" does not allege that their conduct was the result of a state-court judgment, but instead contends that their conduct was left unchecked by the Article 78 proceeding and Judge Milano's decision. See Compl. at 3-5. As plaintiff's claims against them do not "derive" from a state-court judgment, the claims are not barred by the Rooker-Feldman doctrine. Sung Cho, 910 F.3d at 646 (quoting Hoblock, 422 F.3d at 87). Nevertheless, the claims against Attorney Crossway and the "Unknown State Actors" are barred by the statute of limitations.

### 2. Statute of Limitations

"The statute of limitations for claims brought pursuant to § 1983 is determined by state law, and in New York State, the statute of limitations for actions brought pursuant to § 1983 is three years." Johnson v. Fargione, No. 1:20-CV-764 (LEK/CFH), 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021). "Under federal law, which governs the accrual of claims brought under § 1983, ... a claim accrues once the plaintiff knows or has reason to know of the injury which is the basis of the action[.]" Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994) (citations and quotation marks omitted). Plaintiff challenges statements made, and documents submitted, during his Article 78 proceeding. See Compl. at 4. Plaintiff does not provide the date of the proceeding. See generally Compl. Instead, plaintiff provides the date of the "final Judgment" on April 15, 2019.[4] Id. at 3. It is likely that plaintiff's claims accrued at the time he heard and observed the alleged falsified statements and documents. See id. The Appellate Division of

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 37 of 84

2022 WL 16646531

the Third Department stated that plaintiff commenced his Article 78 proceeding in August 2018. See Scott v. State, 1217, 149 N.Y.S.3d 297 (2021), appeal dismissed, leave to appeal denied, 184 N.E.3d 889 (2022). However, neither plaintiff, the Court of Claims, or the Third Department have stated the date of the proceeding. Thus, the undersigned cannot perform a more specific analysis. Assuming for the purposes of initial review that the final judgment from the Article 78 proceeding was the time that plaintiff knew of his injuries from the "Unknown State Actors" and Attorney Crossway's conduct, he would have had to file his complaint three years later, by April 15, 2022. Plaintiff filed his claim on May 13, 2022. See generally Compl. Thus, the claims are time-barred. See LaPietra v. City of Albany Police Dep't, No. 9:19-CV-1527 (TJM/TWD), 2020 WL 5891888, at *10 (N.D.N.Y. Oct. 5, 2020) ("[A]lthough the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on initial review.") (citing Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding that dismissal of "a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based on a defense that appears on the face of the complaint.")), report and recommendation adopted, 2020 WL 7021589 (N.D.N.Y. Nov. 30, 2020).

4    The undersigned notes that in Judge Milano's Court of Claims Decision, he stated that plaintiff's "driving privileges were restored pursuant to a CPLR Article 78 Judgment of the Albany County Supreme Court issued on April 4, 2019." Scott, No. 2019-041-061, slip op. at 1.

 *5  To the extent it appears from the only date that plaintiff provided, April 15, 2019, that he filed his complaint less than one month late on May 13, 2022, "[e]quitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." Valdez ex rel. Donely v. United States, 518 F.3d 173, 182 (2d Cir. 2008) (citation omitted); see also Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996) ("Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances."). "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Victorial v. Burge, 477 F. Supp. 2d 652, 654 (S.D.N.Y. 2007) (quotation and citation omitted); see also Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) ("The burden of demonstrating the appropriateness of equitable tolling ... lies with the plaintiff."). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 396 (2007).

There is nothing in plaintiff's complaint to suggest that equitable tolling could save his time-barred claims concerning the actions taken before and during the Article 78 proceeding, or the subsequent final judgment. See generally Compl. First, the undersigned is not aware of anything that prevented plaintiff from simultaneously filing suit in federal court and in the New York Court of Claims. See also Frankel v. J.P. Morgan Chase & Co., 907 N.Y.S.2d 281, 284 (2010) ("[T]here is no strict legal bar to the existence of simultaneous actions concerning the same subject matter in state and federal court[.]"). Rather, the Court of Claims denied jurisdiction over plaintiff's federal and state constitutional challenges which he now brings to this Court. See Scott, No. 2019-041-061, slip op. at 3 (citation omitted) ("To the extent claimant alleges federal or state constitutional causes of action against defendant, the law is settled that 'claims for damages against the State based on alleged deprivations of rights under the US Constitution are beyond the jurisdiction of the Court of Claims[.]' "); cf. Reed v. Medford Fire Dep't, Inc., 806 F. Supp. 2d 594, 613-14 (E.D.N.Y. 2011) (citation omitted) ("[T]he Second Circuit has explicitly held that a plaintiff is not barred from bringing a Section 1983 claim '[even where ... it is based upon the same cause of action as the Article 78 proceeding]', if the plaintiff is seeking damages that were unavailable in the Article 78 court.").

To the extent plaintiff was in the process of filing his claim in the Court of Claims and appealing the Court of Claims decision in state court, "[t]he reference to 'knowledge of injury' [in the equitable tolling standard] does not suggest that the statute [of limitations] does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful." Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1995); cf. Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007) ("We have held ... that a plaintiff's pursuit of a state remedy, such as an Article 78 proceeding, does not toll the statute of limitations for filing a claim pursuant to section 1983."). This suggests that plaintiff's claims are time-barred not by the date of the final judgment, but by the earlier date of the Article 78 proceeding. Moreover, "[c]ongress has neither explicitly nor implicitly required exhaustion of state remedies to bring section 1983 claims under the [ ] Fourteenth Amendment[ ] outside of the context of prisoner suits." Bal

2022 WL 16646531

v. Manhattan Democratic Party, No. 16-CV-2416 (PKC), 2018 WL 6528766, at *4 (S.D.N.Y. Dec. 12, 2018); see also Chase Grp. All. LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 153 (2d Cir. 2010) (citation omitted) ("This is not by any means to say that valid Section 1983 claims based on due process violations require exhaustion of state remedies. But '[w]hen § 1983 claims allege procedural due process violations, we nonetheless evaluate whether state remedies exist because that inquiry goes to whether a constitutional violation has occurred at all.' ").

*6 Based on the foregoing, it appears that equitable tolling is inapplicable and cannot be applied to save plaintiff's time-barred claims. However, in light of plaintiff's pro se status, the lack of specific information concerning the date of the Article 78 proceeding, and the closeness in time between the expiration of the statute of limitations and the filing of plaintiff's complaint, it is recommended that the claims against Attorney Crossway and the "Unknown State Actors" not be dismissed on statute of limitations grounds but based on immunity and failure to state a claim, respectively. See Abbas, 480 F.3d at 640 (citations omitted) ("[U]nless it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective, we believe it is bad practice for a district court to dismiss without affording the plaintiff an opportunity to be heard in opposition. Indeed, failure to afford an opportunity to oppose a contemplated sua sponte dismissal may be, by itself, grounds for reversal.").

### 3. Attorney Crossway

Plaintiff does not specify whether he seeks to sue Attorney Crossway in her official or personal capacity. See generally Compl; see also Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d Cir. 1993) (citations and quotation marks omitted) ("[I]n many cases, a complaint against public officials will not clearly specify whether officials are sued personally, in their official capacity, or both, and only [t]he course of proceedings ... will indicate the nature of the liability to be imposed[.]"); Green v. Schmelzle, 210 F. Supp. 3d 454, 466 (W.D.N.Y. 2016) (quoting Frank v. Relin, 1 F.3d 1317, 1326 (2d Cir. 1993)) ("[W]hen the face of a complaint fails to state clearly whether a government official is being sued in his official capacity, or his individual capacity, or both, courts look to the course of the proceedings to determine the nature of the liability to be imposed. Thus, a plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other."). Plaintiff's allegations concern Attorney Crossway's actions taken in her capacity as counsel for the DMV before and during the Article 78 proceeding. See Compl. at 4-5. At this early stage, the undersigned will consider whether either a personal or official capacity claim can survive initial review.

As to an official-capacity suit, "the DMV is an agency acting on behalf of the State of New York and is entitled to sovereign immunity under the Eleventh Amendment in [a] § 1983 claim." Sandoval v. Dep't of Motor Vehicles State of New York, 333 F. Supp. 2d 40, 43 (E.D.N.Y. 2004) (citing Feingold v. State of New York, 366 F.3d 138, 149 (2d Cir. 2004) ("[W]e find that [the plaintiff's] § 1983 claim is clearly barred by the Eleventh Amendment because the DMV is a state agency")). Courts have extended Eleventh Amendment immunity to government attorneys representing state agencies who are sued in their official capacities. See Wolters v. Att'y Gen., N.Y. State, No. 12-CV-1544 (KAM/SMG), 2012 WL 1416706, at *3 (E.D.N.Y. Apr. 24, 2012) ("As officials who represent agencies of the State of New York, the Queens County District Attorney, the Richmond County District Attorney, the New York State DMV Commissioner, and the New York State Attorney General are all entitled to immunity under the Eleventh Amendment."); Clark v. Schroeder, 847 F. App'x 92, 94 (2d Cir.) (summary order) (affirming dismissal of a complaint against the Commissioner of the DMV because of Eleventh Amendment immunity), cert. denied, 142 S. Ct. 341 (2021). To the extent plaintiff seeks to sue Attorney Crossway in her official capacity, she is entitled to Eleventh Amendment immunity as an attorney for the New York State DMV.

Next, to the extent plaintiff seeks to sue Attorney Crossway in her personal capacity, she is entitled to absolute immunity. It is well settled that prosecutors are absolutely immune from suit. See Anilao v. Spota, 27 F.4th 855, 863 (2d Cir. 2022) ("The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy."). "[T]he Supreme Court extended prosecutorial immunity to government attorneys involved in administrative proceedings." Roache v. Att'y Gen.'s

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

2022 WL 16646531

Off., No. 9:12-CV-1034 (LEK/DEP), 2013 WL 5503151, at *14 (N.D.N.Y. Sept. 30, 2013) (citing Butz v. Economou, 438 U.S. 478, 512-13 (1978) ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suit for damages.")) "The Second Circuit, in turn, has extended the same immunity to government attorneys prosecuting and defending civil actions." Id. (emphasis added) (citing Barrett v. U.S., 798 F.2d 565, 572 (2d Cir. 1986) ("The controversial nature of the proceeding[s], the risk that a losing defendant will seek to retaliate by a suit attacking the propriety of the government attorney's conduct, and the existence of alternative safeguards against the attorney's misconduct ... militate in favor of absolute immunity."); see also Mangiafico v. Blumenthal, 471 F.3d 391, 396 (2d Cir. 2006) (citation and quotation marks omitted) ("As a general principle, a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process.... We have expanded this principle to apply to the functions of a government attorney that can fairly be characterized as closely associated with the conduct of litigation or potential litigation in civil suits—including the defense of such actions.").

**\*7** Plaintiff seeks to sue Attorney Crossway for representations to the court in plaintiff's Article 78 proceeding concerning his New York driver's license. See Compl. at 4. Specifically, plaintiff asserts that Attorney Crossway "knowingly misrepresented material facts of this case to the court ... [and] maintained that these arbitrary actions were taken with discretion and authority to effectively revoke another state's driver's license." Id. at 5.

As plaintiff's claims concern only Attorney Crossway's actions taken in representing the New York State DMV, she is entitled to absolute immunity. See Hirsch v. Quinones, No. 21-CV-6311 (LTS), 2021 WL 3773640, at *3 (S.D.N.Y. Aug. 23, 2021) ("[The p]laintiff's claims against [the defendant] are based on actions within the scope of her official duties as a government attorney representing the State of New York in the New York State Court of Claims in cases brought by [the p]laintiff against the State of New York. Therefore, these claims are dismissed because they seek monetary relief against a defendant who is immune from suit."). As such, Attorney Crossway is entitled to Eleventh Amendment and absolute immunity whether plaintiff seeks to sue her in her official or personal capacity, respectively. Thus, the undersigned recommends dismissing the claims against her with prejudice and without leave to amend. See Bouchard v. Thomson, No. 1:17-CV-1156 (LEK/CFH), 2018 WL 1665213, at *5 (N.D.N.Y. Apr. 4, 2018) (dismissing amended complaint without leave to amend where "the claims [the p]laintiff asserts against [the d]efendants are irreparable because they are barred either by sovereign or prosecutorial immunity."), aff'd sub nom. Bouchard v. Olmsted, 775 F. App'x 701 (2d Cir. 2019) (summary order).


### 4. Judge Milano

As an alternative to the applicability of the Rooker-Feldman doctrine, were the Court to have subject matter jurisdiction over plaintiff's claims against Judge Milano, Judge Milano would be immune from suit. Cf. Fraccola, 670 F. App'x at 35 n.1 (internal citation omitted) ("We interpret the District Court's memorandum decision and order dismissing [the plaintiff's] claims as resting on the Rooker-Feldman doctrine and in the alternative on judicial immunity grounds. Because the Rooker-Feldman doctrine implicates the subject matter jurisdiction of the District Court, the doctrine's application in this case should have been analyzed first and is dispositive."). Plaintiff asserts that Judge Milano "violated plaintiff's due process by unlawfully dismissing the claim, preventing him from seeking compensation for losses incurred from the wrongful actions taken against him." See Compl. at 4.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." Whole Woman's Health v. Jackson, 142 S. Ct. 522, 532 (2021). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citation omitted). Eleventh Amendment immunity has been extended to judges of the New York State Unified Court System. See Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (citation omitted) ("[T]he New York State Unified Court System is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." (citing N.Y. Const. Art. VI, § 29(a) (emphasis added) ("The legislature shall provide for the allocation of the cost of operating and maintaining the court of appeals, the appellate division of the supreme court in each

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

2022 WL 16646531

judicial department, the supreme court, [and] the court of claims ...."); see also Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing claim against Ulster Family Court judge on sovereign and judicial immunity grounds); Aron v. Becker, 48 F. Supp. 3d 347, 367 (N.D.N.Y. 2014) ("[A]ll claims for monetary damages against ... [County] Judge Becker in [his] official capacities are dismissed with prejudice[ ]" because of Eleventh Amendment immunity); Zeigler v. New York, 948 F. Supp. 2d 271, 282 (N.D.N.Y. 2013) ("All claims against [Administrative] Judge Tormey in his official capacity for money damages will also be dismissed as they are barred by the Eleventh Amendment."). As the Court of Claims is a part of the New York State Unified Court System and to the extent plaintiff seeks to sue Judge Milano in his official capacity, Judge Milano is entitled to Eleventh Amendment immunity.

 *8  Plaintiff states that he does not seek monetary damages from Judge Milano "but instead asks the Court for relief from all orders made in violation of law, that due process be allowed, and that the Court issue further relief as it deems appropriate." Compl. at 6. "In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution." Brown v. New York, 975 F. Supp. 2d 209, 222 (N.D.N.Y. 2013). "Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff '(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.' " Id. (quoting In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007)). "[D]eclaratory relief is not permitted under Ex parte Young when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." Id. at 225.

Plaintiff appears to be asking only for retrospective relief—that this Court determine that Judge Milano's Decision and Order was incorrect, contrary to law, and/or unconstitutional. See id. As plaintiff seeks only declaratory relief concerning Judge Milano's past conduct, the claim "must be dismissed because the Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.' " Brown, 975 F. Supp. 2d at 226 (quoting Finch v. New York State Office of Children & Family Serv., 499 F. Supp. 2d 521, 538, n.138 (S.D.N.Y. 2007)).

It is also "well-established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam). "[J]udicial immunity does not bar a claim for prospective injunctive and declaratory relief." Shtrauch v. Dowd, 651 F. App'x 72, 73 (2d Cir. 2016) (summary order). However, because plaintiff only challenges past conduct and "does not allege that [Judge Milano's] conduct constitutes a continuing constitutional violation, nor does he allege that it may recur[,]" plaintiff's claim is not one for prospective relief and Judge Milano is entitled to absolute immunity. Jackson v. Stanford, No. 16-CV-9702 (AJN), 2019 WL 13166075, at *2 (S.D.N.Y. Jan. 7, 2019) (citation omitted).

To defeat judicial immunity, plaintiff contends that Judge Milano "act[ed] without jurisdiction, power or authority to dismiss [plaintiff's] claim for damages with no basis in law." Compl. at 6. Plaintiff contends that Judge Milano's decision "was effectively a review of the administrative agency's actions, which the Court of Claims has no jurisdiction over.... Judge Milano did not address any of the issues settled by the Supreme Court. The Supreme Court, not the Court of Claims, is the court of original jurisdiction or court of original instance in this case." Id. at 5.

"[A] judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 12 (1991) (per curiam). "[T]he Court of Claims has no subject matter jurisdiction to entertain" "review of an administrative agency's determination" "as review of such determinations are properly brought only in Supreme Court in a[n] article 78 proceeding[.]" City of New York v. State, 847 N.Y.S.2d 768, 771 (App. Div. 2007) (citations omitted); see also Madura v. State, 784 N.Y.S.2d 214, 216 (App. Div. 2004) (citation omitted) ("As a court of limited jurisdiction, the Court of Claims has no jurisdiction to grant strictly equitable relief[.]"). Additionally, "the filing requirements of Court of Claims Act § 10 are jurisdictional in nature, and the failure to comply with such requirements deprives the Court of Claims of subject matter jurisdiction[.]" Hughes v. State, 963 N.Y.S.2d 350, 351 (App. Div. 2013); see also Frederick v. State, 874 N.Y.S.2d 762, 765 (Ct. Cl. 2009) (citations omitted) ("Court of Claims Act § 10 is more than a statute of limitations; it is a jurisdictional prerequisite to

Scott v. Crossway, Not Reported in Fed. Supp. (2022)
Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 41 of 84
2022 WL 16646531

bringing and maintaining an action in this Court[.] Failure to timely comply with the statutory filing requirements of the Court of Claims Act constitutes a fatal jurisdictional defect requiring dismissal[.]").

**\*9** Judge Milano did not exercise jurisdiction over the merits of plaintiff's claim and instead dismissed plaintiff's claim because it was untimely filed under Court of Claims Act § 10(3) and because plaintiff failed to state a cause of action. See Scott, No. 2019-041-061, slip op. at 1-4. Judge Milano did not review the DMV's actions or make any determination as to their lawfulness. See id. at 1-4. Plaintiff states that Judge Milano "did not decide on the arguments brought forth by the defense in its motion to dismiss[.]" Compl. at 5. However, Judge Milano's decision states that "Defendant moves, in lieu of answering, to dismiss the claim ... as untimely ... and because the claim fails to state a cause of action[.]" Scott, No. 2019-041-061, slip op. at 1. It was on those two grounds that Judge Milano dismissed plaintiff's claim. See id. at 2-4. Plaintiff's disagreement with Judge Milano's decision is insufficient to establish that he was acted absent jurisdiction. See McKnight v. Middleton, 699 F. Supp. 2d 507, 524 (E.D.N.Y. 2010) ("[J]udicial immunity is not stripped based on the propriety of her particular rulings, where there is no question as to her subject matter jurisdiction over the case."), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order). As Judge Milano was not acting absent all jurisdiction, were this Court to have subject matter jurisdiction over plaintiff's claim against him, Judge Milano would be immune from suit. As the undersigned has determined that this Court lacks subject matter jurisdiction over plaintiff's claim against Judge Milano, the complaint must be dismissed without prejudice. See supra at 8. However, because Judge Milano is immune from suit, amendment would be futile, and the undersigned recommends dismissing the complaint against him without prejudice but without leave to amend. See, e.g., Brady v. Ostrager, 834 F. App'x 616, 619 (2d Cir. 2020) (summary order) ("Given Justice Ostrager's judicial immunity, the district court correctly held that amendment would be futile.").

### 5. "Unknown State Actors"

In addition to plaintiff's claims against the "Unknown State Actors" being barred by the statute of limitations, plaintiff has failed to sufficiently state a claim for relief. See supra at 9-14. Plaintiff states that the "Unknown State Actors" "violated [his] civil rights under the Fourteenth Amendment" and "committed the act of civil fraud[.]" Compl. at 3. Plaintiff states that they "falsified records and/or documents pertaining to [p]laintiff's New York [S]tate driving record for the purpose of inducing the court to dismiss the petition for relief." Id. at 3-4. Plaintiff also asserts that they "deprived him of his vested property" "and acted with intent to harm" him. Id. at 5.

To the extent plaintiff asserts that the "Unknown State Actors" deprived him of his property, "any constitutional procedural due process claim arising from an alleged deprivation of personal property is not cognizable under § 1983 because New York law provides an adequate post-deprivation remedy." Pittman v. Billings, 20-CV-0422 (GLS/ATB), 2020 WL 2079440, at \*3 (N.D.N.Y. Apr. 30, 2020) (collecting cases); see Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 882 (2d Cir. 1996) ("[T]here is no constitutional violation (and no available Section 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty."). The Second Circuit has held that "an Article 78 proceeding constitutes an adequate postdeprivation procedure under the Due Process Clause[.]" Hellenic, 101 F.3d at 881. "Article 78 proceedings provide an adequate remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government." Chaney v. City of Albany, No. 6:16-CV-1185 (NAM/TWD), 2019 WL 3857995, at \*13 (N.D.N.Y. Aug. 16, 2019) (citing Hourihan v. Lafferty, 58 F. Supp. 2d 10, 14-15 (N.D.N.Y. 1999)).

Plaintiff pursued an Article 78 proceeding about the deprivation of his driver's license and does not claim that the remedy was inadequate. See Compl. at 3-4. Rather, plaintiff received some of the relief sought—removal of the hold on his license—through the Article 78 proceeding. See id. at 3; see W.D. v. Rockland Cnty., 521 F. Supp. 3d 358, 390 (S.D.N.Y. 2021) (dismissing a procedural due process claim where "an Article 78 proceeding was available, as [the p]laintiffs pursued this very remedy and obtained the relief they sought...."). Additionally, to the extent plaintiff asserts that the "Unknown State Actors" and Attorney Crossway violated plaintiff's rights during the Article 78 proceeding, he could have instituted a second Article 78 proceeding. See Stubbs v. de Simone, No. 04-CV-5755 (RJH/GWG), 2005 WL 2429913, at \*10, \*15 (S.D.N.Y. Sept. 30, 2005) (stating

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

2022 WL 16646531

that "[a]n adequate postdeprivation remedy existed because [the plaintiff] was free to institute a new Article 78 proceeding to challenge the alleged[ly]" conduct that occurred through the dismissal and appeal of his first Article 78 proceeding). As there is an adequate postdeprivation state remedy to address plaintiff's claims, plaintiff has failed to state a cognizable claim for a procedural due process violation.

**\*10** Next, "[t]he Due Process Clause of the Fourteenth Amendment has a substantive component that bars certain government actions regardless of the fairness of the procedures used to implement them." Johnson v. Rodeway Inn Syracuse, No. 5:22-CV-0396 (GLS/ML), 2022 WL 2308102, at \*7 (N.D.N.Y. June 1, 2022) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998)) (quotation marks omitted), report and recommendation adopted, 2022 WL 2292045 (N.D.N.Y. June 24, 2022), appeal dismissed (Sept. 22, 2022). "It is well-settled that when an alleged right is not fundamental, the protections of substantive due process do not apply." Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 339 (E.D.N.Y. 2014) (citing Tessler v. Paterson, 451 F. App'x 30, 32-33 (2d Cir. 2011) (summary order)). Further, to plead a substantive due process claim, "the defendant's conduct must also be found to be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " Johnson, 2022 WL 2308102, at \*7 (quoting Lewis, 523 U.S. at 848 n.8). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849.

"The Constitution protects a fundamental right to travel within the United States," Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]" Town of Southold v. Town of E. Hampton, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted). "To the contrary, the Supreme Court has repeatedly affirmed that the states have a paramount interest in highway safety and may summarily suspend or revoke a driver's license with due process." Annan v. State of New York Dep't of Motor Vehicles, No. 15-CV-1058 (CBA/CLP), 2016 WL 8189269, at \*5 (E.D.N.Y. Mar. 2, 2016) (citing Mackey v. Montrym, 443 U.S. 1, 19 (1979) (holding that Massachusetts statute allowing for summary suspension of a driver's license with availability of prompt postsuspension hearing was constitutional); Dixon v. Love, 431 U.S. 105, 115 (1977) (holding that Illinois statute providing for summary suspension of a driver's license with availability of a postdeprivation hearing was constitutional), aff'd, 662 F. App'x 85 (2d Cir. 2016) (summary order). "[T]he right to maintain a driver's license is substantial and entitled to due process protection, but has not been recognized as the type 'implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition.' " Yandow v. Kronau, No. 1:09-CV-903 (GLS/DRH), 2011 WL 282449, at \*5 (N.D.N.Y. Jan. 24, 2011) (quoting Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 460-61 (2d Cir. 1996)).

Plaintiff's contention that he was deprived of his driver's license through its suspension, therefore, does not establish a fundamental right. Further, the allegations do not constitute conduct that "shocks the conscience." See generally Compl.; see also Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 275 (2d Cir. 2011) (citation omitted) ("It is not enough that the government act be 'incorrect or ill-advised'; it must be conscience-shocking."). As such, plaintiff has failed to state a plausible substantive due process claim and it is recommended that plaintiff's claim against the "Unknown State Actors" be dismissed. See Bey v. D.C., No. 17-CV-6203 (MKB), 2018 WL 5777021, at \*6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's "right to travel claim[ ]" because "[t]he seizure of [the p]laintiff's vehicle alone is insufficient to state a claim for violation of his constitutional right to travel. [The p]laintiff retained his ability and constitutional right to travel even if inconvenienced by the seizure of his motor vehicle."). Mindful of plaintiff's pro se status, the undersigned nevertheless recommends dismissing plaintiff's complaint against the "Unknown State Actors" with prejudice and without leave to amend as plaintiff cannot state a procedural due process claim where there is an adequate state remedy to address his claims and he cannot state a substantive due process claim where there is no fundamental right to a driver's license. [5] See MacInerney v. Allen, No. 52:1-CV-0818 (LEK/ML), 2022 WL 561649, at \*5 (N.D.N.Y. Feb. 24, 2022) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)), report and recommendation adopted, 2022 WL 1025841 (N.D.N.Y. Apr. 6, 2022) ("An opportunity to amend is not required, however, where 'the problem with [the plaintiff's] causes of action is substantive' such that 'better pleading will not cure it.' "); see also Annan, 662 F. App'x at 86 (affirming the district court's dismissal of the complaint—which included the plaintiff's

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 43 of 84

2022 WL 16646531

right to travel claim—"without leave to amend, because, ... [the] allegations failed to state a claim, and an amendment would have been futile.").

5    It is also likely that the claims against the "Unknown State Actors" are subject to dismissal on immunity grounds. Plaintiff has not identified the "Unknown State Actors"; therefore, the undersigned cannot perform a more specific analysis. Compl. at 3-4. However, Eleventh Amendment immunity extends to state actors. See Gollomp, 568 F.3d at 366 ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents ... that are, effectively, arms of a state."); Mullin v. P & R Educ. Servs., Inc., 942 F. Supp. 110, 114 (E.D.N.Y. 1996) ("Because the doctrine of sovereign immunity extends to state officials sued in their official capacity, the complaint is dismissed to the extent that it alleges a § 1983 violation by [the] Commissioner" of the DMV).

### 6. Supplemental Jurisdiction

**\*11** As to plaintiff's claims against Attorney Crossway and the "Unknown State Actors" for "civil fraud", the Court may exercise supplemental jurisdiction over state law claims when "a plaintiff's federal and state claims present 'but one constitutional case' and 'derive from a common nucleus of operative fact.' " Shepherd v. Nandalawaya, No. 6:19-CV-06406 (EAW), 2020 WL 1963126, at \*4 (W.D.N.Y. Apr. 21, 2020) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). "When a federal court dismisses federal claims, the court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3)[.]" Id. (citing Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.")). "Once all federal claims have been dismissed, the balance of factors will 'usual[ly]' point toward a declination." Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 1118 (2d Cir. 2013). Plaintiff's purported state law claims arise from the same set of facts as his § 1983 claims concerning the documents and statements related to his Article 78 proceeding. See generally Compl. As the undersigned is recommending dismissal of plaintiff's purported federal claims, it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's "civil fraud" state law claims.[6] Compl. at 5.

6    In the alternative, the fraud claims could be dismissed because there is a heightened pleading standard for fraud claims that plaintiff's complaint fails to meet. Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "[T]he complaint must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.' " MacInerney, 2022 WL 561649, at \*5 (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)). Additionally, "although mental states may be pleaded 'generally,' a plaintiff must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.' " Id. (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)). Plaintiff asserts that Attorney Crossway and the "Unknown State Actors" provided fraudulent documents and statements during the Article 78 proceeding. Compl. at 3-4. Plaintiff does not explain what was stated in the documents or what statements were made during the proceeding that were allegedly false. See id. at 3-4. The only specific statements plaintiff provides are Attorney Crossway's affirmations that "she had not only had personal knowledge of the case as a thirteen-year staff attorney for the NYS DMV Driver Improvement Unit, but had also consulted with unnamed authorities in the NYS DMV and had reviewed the records provided by them." Id. at 4. Plaintiff does not explain which statement was allegedly false. See id. Plaintiff has also failed to allege facts "that give rise to a strong inference of fraudulent intent." Lerner, 459 F.3d at 290-91. As such, were the Court to exercise subject matter jurisdiction over the fraud claims, they would likely need to be dismissed for failure to state a claim. See MacInerney, 2022 WL 561649, at \*4-5.

Scott v. Crossway, Not Reported in Fed. Supp. (2022)

2022 WL 16646531

### III. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) against Dinah M. Crossway and the "Unknown State Actors" be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) against Frank P. Milano be **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is

 **\*12  ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [7]

[7]     If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16646531

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Scott v. Crossway, Not Reported in Fed. Supp. (2023)

2023 WL 34543

2023 WL 34543
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James P. SCOTT, Plaintiff,

v.

Dinah M. CROSSWAY, Esq., et al., Defendants.

1:22-cv-500 (BKS/CFH)

|

Signed January 4, 2023

**Attorneys and Law Firms**

Plaintiff pro se: James P. Scott, Tampa, FL 33635.

### MEMORANDUM-DECISION AND ORDER

Brenda K. Sannes, Chief United States District Judge:

**\*1** Plaintiff pro se James P. Scott filed this action asserting causes of action under 42 U.S.C. § 1983 and state law and seeking leave to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2). This matter was referred to United States Magistrate Judge Christian F. Hummel who, on November 3, 2022, issued a Report-Recommendation and Order granting Plaintiff's application to proceed IFP and recommending that: Plaintiff's claims against Defendant, the Honorable Frank P. Milano, be dismissed under the *Rooker-Feldman* doctrine [1] and as barred by sovereign and judicial immunity; Plaintiff's claims against Defendants Dinah M. Crossway, Esq. and the "Unknown State Actors" be dismissed as barred by the statute of limitations; Plaintiff's official and individual capacity claims against Attorney Crossway be dismissed as barred by sovereign immunity and absolute immunity, respectively; Plaintiff's Fourteenth Amendment claims against the "Unknown State Actors" be dismissed for failure to state a claim; and the Court decline to exercise supplemental jurisdiction and dismiss any remaining state law claims. (Dkt. No. 6). Magistrate Judge Hummel advised Plaintiff that under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.* at 28). Following the issuance of the Report-Recommendation, Plaintiff notified the Court of a change of address and requested an extension of time to file objections, which was granted. (Dkt. Nos. 7, 8, 9). Plaintiff did not file any objections to the Report-Recommendation.

[1] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 6) is **ADOPTED**; and it is further

**ORDERED** Plaintiff's federal claims against Dinah M. Crossway and the Unknown State Actors are **DISMISSED with prejudice**; and it is further

Scott v. Crossway, Not Reported in Fed. Supp. (2023)

2023 WL 34543

**ORDERED** that Plaintiff's claims against Frank P. Milano are **DISMISSED without prejudice and without leave to amend**; and it is further

**ORDERED** that Plaintiff's state law "civil fraud" claims against Dinah M. Crossway and the Unknown State Actors are **DISMISSED without prejudice**; and it is further

**ORDERED** that the Clerk enter judgment and close this case; it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 34543

---

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1906594
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ellis Davon DUDLEY, II, Plaintiff,

v.

Governor Kathy HOCHUL, of New York; New York State; Dr. James V. McDonald; Randal B. Caldwell; Megan
Johnson; Christina F. Dejoseph; Sandra Milner; Jeffrey A. Domachowski; Karen Stanislaus; Arlene Bradshaw; Julie
A. Cecile; Onondaga County Sheriff; Patricia L. DeRue; Sue Ottaviano; Julie A. Cerio; Katie Boyea; David M. Primo;
Martha E. Mulroy; Michelle Pirro Baily; Unkown; Hiscock Legal Aid; and Dep't of Health and Soc. Servs., Defendants.

5:24-CV-0048 (DNH/ML)
|
Signed May 1, 2024

**Attorneys and Law Firms**

ELLIS DAVON DUDLEY, II, Plaintiff, Pro Se, Post Office Box 7124, Syracuse, New York 13261.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* ("IFP")
(Dkt. No. 2) and a motion for permission to file electronically in ECF (Dkt. No. 3) filed by Ellis Davon Dudley, II ("Plaintiff")
to the Court for review. For the reasons discussed below, I (1) grant Plaintiff's IFP application (Dkt. No. 2), (2) recommend that
Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend, and (3) deny without prejudice Plaintiff's
motion for permission to file electronically (Dkt. No. 3).

## I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint asserts that his rights were violated by Defendants Governor Kathy Hochul, New
York State, Dr. James V. McDonald, Randal B. Caldwell, Megan Johnson, Christina F. Dejoseph, Sandra Milner, Jeffrey
A. Domachowski, Karen Stanislaus, Arlene Bradshaw, Julie A. Cecile, Onondaga County Sheriff, Patricia L. DeRue, Sue
Ottaviano, Julie A. Cerio, Katie Boyea, David M. Primo, Martha E. Mulroy, Michelle Pirro Baily, Unknown, Hiscock Legal
Aid, and Department of Health and Social Service (collectively "Defendants"), who were all involved in Plaintiff's state court
family proceedings. (*See generally* Dkt. No. 1.)

[1]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169,
173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

The Complaint is difficult to decipher (*id.*), but alleges that Plaintiff has two minor children, whom Plaintiff refers to as "blue
child" and "pink child" throughout the Complaint. (Dkt. No. 1 at 2.) The Complaint provides a timeline of Plaintiff's experiences
with the New York State Family Court system dating back to July 9, 2019. (*Id.*) The crux of Plaintiff's grievance appears to be
that (1) the court-ordered child support is excessive, (2) Plaintiff and his family have somehow "lost" their nationality because
of the family court proceedings, and (3) Plaintiff's wages were garnished to pay his court-ordered child support and he did not
consent to the seizure of his property. (*See generally* Dkt. No. 1.)

The Complaint appears to assert the following nine causes of action: (1) a claim of racketeering, (2) a claim that Plaintiff's rights pursuant to the First Amendment and 42 U.S.C. § 1983 were violated; (3) a claim that Plaintiff's rights pursuant to the Second Amendment and 42 U.S.C. § 1983 were violated; (4) a claim that Plaintiff's rights pursuant to the Fourth Amendment and 42 U.S.C. § 1983 were violated; (5) a claim that Plaintiff's rights pursuant to the Fifth Amendment and 42 U.S.C. § 1983 were violated; (6) a claim that Plaintiff's rights pursuant to the Sixth Amendment and 42 U.S.C. § 1983 were violated; (7) a claim that Plaintiff's rights pursuant to the Eighth Amendment and 42 U.S.C. § 1983 were violated; (8) a claim that Plaintiff's rights pursuant to the Thirteenth Amendment and 42 U.S.C. § 1983 were violated; and (9) a claim that Plaintiff's rights pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983 were violated. (Dkt. No. 1 at 6.) As relief, Plaintiff seeks damages in the "amount of 20 million dollars or a full disclosure of all contract terms for a consideration to acceptance at the agreement of terms of competition. As well [as] an immediate stop to the organization tasks with damaging and seizure [of Plaintiff's] property." (*Id.*)

**\*2** Plaintiff also filed an application to proceed IFP. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed IFP is granted. [3] (*Id.*)

[2]    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]    Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at \*1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ...

court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

**\*3**  "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Claims Alleging "Racketeering"

To the extent that the Complaint is construed as alleging a claim pursuant to 18 U.S.C. § 1691 et seq., ("RICO") I recommend that it be dismissed. [4]

[4]    Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the Complaint. Despite thirty days having elapsed since the filing of his Complaint, Plaintiff has failed to file a Civil RICO statement. (*See generally* docket sheet.) As a result, I recommend that, in the alternative, Plaintiff's RICO claim be dismissed. *See Poole v. Bendixen*, 20-CV-0697, 2021 WL 3737780, \*12 (N.D.N.Y. Aug. 24, 2021) (Suddaby, C.J.); *Murphy v. Onondaga Cnty.*, 18-CV-1218, 2022 WL 819281, \*6 (N.D.N.Y. Mar. 18, 2022) (Sharpe, J.).

It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity. 18 U.S.C. § 1964. This private right of action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Generally, a plaintiff bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property 'by reason of a violation of section 1962.' " *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at \*7 (S.D.N.Y. Apr. 24, 2020) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c))), *vacated in part on other grounds by Weiss v. David Benrimon Fine Art LLC*, 20-CV-3842, 2021 WL 6128437 (2d Cir. Dec. 28, 2021) (summary order). More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016).

**\*4** The Complaint fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. More specifically, Plaintiff fails to allege facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). In addition, the Complaint fails to allege any facts plausibly suggesting that Defendants functioned as a continuing unit. "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at \*13 (E.D.N.Y. Sept. 24, 2013); *see also Peterson v. City of New York*, 11-CV-3141, 2012 WL 75029, at \*3-4 (S.D.N.Y. Jan. 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

Moreover, the Complaint fails to allege facts plausibly suggesting a pattern of racketeering activity. 18 U.S.C. § 1961(5) (To sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other); *Westester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)) (To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, *and* ... amount to or pose a threat of continued criminal activity.' "). The Complaint fails to allege any acts of racketeering activity and instead merely uses the word "racketeering" in a conclusory fashion without facts plausibly suggesting the commission of any predicate acts. (*See generally* Dkt. No. 1.)

For each of these alternative reasons, I recommend that Plaintiff's RICO claim be dismissed.

### B. Claims Pursuant to 42 U.S.C. § 1983

After carefully considering Plaintiff's claims pursuant to 42 U.S.C. § 1983, I recommend that they be dismissed for three reasons.

First, to the extent that there are final state court orders or judgments that Plaintiff asks this Court to overturn, those claims are barred by the *Rooker-Feldman* doctrine. *Porter v. Nasci*, 24-CV-0033, 2024 WL 1142144, at \*4 (N.D.N.Y. Mar. 15, 2024) (Dancks, M.J.) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021)) ("Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Porter*, 2024 WL 1142144, at \*4 (citing *Sims v. Kaufman*, 23-CV-7927, 2024 WL 757338, at \*4 (S.D.N.Y. Feb. 14, 2024)) (additional citation omitted); *see also Fernandez v. Turetsky*, 14-CV-4568, 2014 WL 5823116, at \*4 (E.D.N.Y. Nov. 7, 2014) (collecting cases in support of the proposition that "[c]ourts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases ... in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016). Therefore, to the extent Plaintiff seeks to challenge a final judgment of Onondaga County Family Court or the Oneida County Family Court, any such claim is barred by the *Rooker-Feldman* doctrine. *See, e.g., Phillips v. Wagner*, 22-CV-0833, 2022 WL 17406092, at \*3 (N.D.N.Y. Nov. 4, 2022) (Lovric, M.J.) ("Plaintiff's claims, while not entirely clear, seem to challenge an order ... in which the Family Court determined that he owes child support .... Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine ....") (citation omitted), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022) (Hurd, J.), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

**\*5** Alternatively, "in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, 22-CV-0581, 2022 WL 2341420, at \*6 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (citing *Younger v. Harris*, 401 U.S. 37 (1971); *Amato v. McGinty*, 21-CV-0860, 2022 WL 226798, at \*11 (N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022) (Hurd, J.). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing

state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). Courts in this circuit have found these conditions to be satisfied in matters involving child support issues. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying the *Younger* abstention doctrine to dismiss claims which arose from "pending state court proceedings involving child support.") (citation omitted); *Tomczyk v. New York Unified Ct. Sys.*, 19-CV-2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("[T]his Court abstains under *Younger* from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and 'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.' ")). "Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process." *Bowman v. Morris*, 19-CV-0097, 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) (Stewart, M.J.) (citations omitted), *report and recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019) (Sannes, J.).

Second, Plaintiff's claims are likely barred pursuant to the domestic relations exception to the jurisdiction of federal courts. *Dudley v. Montaque*, 24-CV-0223, 2024 WL 1464346, at *4 (N.D.N.Y. Apr. 4, 2024) (Dancks, M.J.) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *Oliver v. Punter*, 22-CV-3580, 2022 WL 3228272, at *3 (E.D.N.Y. Aug. 10, 2022) ("The domestic relations exception to federal jurisdiction divests the federal courts of power to issue divorce alimony and child custody decrees .... This exception also extends to child support determinations and the enforcement thereof.") (internal quotations and citations omitted) ("under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside this Court's jurisdiction."). Accordingly, this Court lacks jurisdiction to adjudicate a claim involving issues of child custody and support. *See Rotondo v. New York*, 17-CV-1065, 2017 WL 5201738, at *4 (N.D.N.Y. Oct. 31, 2017) (Peebles, M.J.) ("[I]t is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction. Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court."), *report and recommendation adopted*, 2017 WL 5198194 (N.D.N.Y. Nov. 9, 2017) (Sharpe, J.); *Cruz v. New York*, 17-CV-0510, 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017) (Dancks, M.J.), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017) (Sannes, J.) (collecting cases in support of the proposition that "[c]laims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.").

Third, the claims against Defendants are not cognizable.

### 1. Claims Against Defendant Hochul

Sovereign immunity bars Plaintiff's claims for damages against Defendant Hochul in her official capacity. Sovereign immunity extends to "actions for the recovery of money from the state" against "state agents." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). A lawsuit brought against officials of a government entity in their official capacities is "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Because Plaintiff's claims for damages against Defendant Hochul in her official capacity is effectively an "action[ ] for the recovery of money from the state," *Leitner*, 779 F.3d at 134, sovereign immunity bars them.

**\*6** Moreover, to the extent that Plaintiff's claims against Defendant Hochul in her official capacity seek prospective relief and to the extent that Plaintiff's claims are construed as against Defendant Hochul in her individual capacity, I recommend that they be dismissed for failure to allege Defendant Hochul's personal involvement in any constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 52 of 84

must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."). The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Here, although Plaintiff names Defendant Hochul as a party, the body of the Complaint lacks any allegations of wrongdoing by her. (*See generally* Dkt. No. 1.) As a result, I recommend that Plaintiff's claims against Defendant Hochul be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 2. Claims Against Defendant New York State

As set forth above, sovereign immunity pursuant to the Eleventh Amendment bars individuals from suing states in federal court, unless Congress abrogates states' immunity or a state consents to suit. *See* U.S. Const. Amend. XI; *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). Accordingly, I recommend that Plaintiff's claims asserted against the New York State be dismissed pursuant to Section 1915(e)(2)(B)(i).

### 3. Claims Against Defendant McDonald

The Complaint identifies Defendant McDonald "as the commissioner of the Department of Health in New York State." (Dkt. No. 1 at 1.) To the extent that the Complaint is construed as asserting claims against Defendant McDonald in his official capacity, he is immune from suit pursuant to the Eleventh Amendment.

Moreover, to the extent that the Complaint is construed as asserting claims against Defendant McDonald in his individual capacity, I recommend that they be dismissed for failure to assert his personal involvement in any constitutional violation.

### 4. Claims Against Defendant Caldwell

Judges are absolutely immune from suit for claims seeking damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209. Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff asserts claims that appear to arise from the efforts of Defendant Caldwell, in his capacity as a family court judge in Oneida County. (Dkt. No. 1 at 6.) Defendant Judge Caldwell is therefore immune from suit under the doctrine of judicial immunity. As a result, I recommend that Plaintiff's claims against Defendant Caldwell in his individual capacity be dismissed based on the doctrine of judicial immunity.

Moreover, I recommend that Plaintiff's claims against Defendant Caldwell in his official capacity be dismissed pursuant to the Eleventh Amendment. *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming

dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges."); *Aron v. Becker*, 48 F. Supp.3d 347, 366-67 (N.D.N.Y. 2014) (McAvoy, J.) (dismissing the plaintiff's claims against a state court judge in his official capacity based on the doctrine of Eleventh Amendment immunity).

### 5. Claims Against Defendants Johnson, Ottaviano, Boyea, and Primo

**\*7** The Complaint alleges that Defendant Johnson was an "Onondaga Family Court attorney" who was tasked with conducting a "virtual meeting call for the Onondaga County family Courthouse." (Dkt. No. 1 at 2.) The Complaint alleges that Defendant Ottaviano was a court assistant who postponed a hearing that was scheduled for February 15, 2023. (Dkt. No. 1 at ¶ 18.) The Complaint alleges that Defendant Boyea was a "Secretary" who emailed a modified custody order signed by Defendant Cecile. (Dkt. No. 1 at ¶ 23.) Finally, the Complaint alleges that Defendant Primo is the Clerk of the Court in Onondaga County Family Court (Dkt. No. 1 at ¶ 10) and he notified the parties of a hearing scheduled on July 20, 2023 (*id.* at ¶ 22).

"As a general principle, a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Judicial immunity has been extended to judicial law clerks, the New York State Chief Chief Administrative Judge, court attorneys, and the chief clerks of several state courts. *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)).

As a result, I recommend that Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo in their individual capacities be dismissed, because they are immune from suit. [5] *See Leftridge v. Judicial Branch*, 22-CV-0411, 2023 WL 4304792, at \*9 (D. Conn. June 30, 2023) (dismissing the plaintiff's claims against the state court clerks of court based on the doctrine of quasi-judicial immunity where "their alleged actions arose out of or related to [plaintiff's] child support and child custody proceedings."); *Braithwaite v. Tropea*, 23-CV-1431, 2023 WL 4207907, at \*4 (E.D.N.Y. June 27, 2023) (citing *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against the Chief Clerks of several state courts based on the doctrine of judicial immunity)) (dismissing as frivolous the plaintiff's claims against the clerk of the court because he was entitled to absolute immunity); *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at \*2 (S.D.N.Y. Aug. 22, 2022) (citing *inter alia, Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at \*2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at \*2 (E.D.N.Y. Sept. 10, 2012) (same)) (noting that courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.").

[5]   In the alternative, I recommend that Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo be dismissed because the Complaint fails to allege the personal involvement of them in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Here, although Plaintiff names Defendants Johnson, Ottaviano, Boyea, and Primo as parties to the action, the body of the Complaint lacks any allegations of wrongdoing by them. (*See generally* Dkt. No. 1.) As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

**\*8** Moreover, I recommend that Plaintiff's claims against Defendants Johnson, Ottviano, Boyea, and Primo in their official capacities as employees of the Onondaga Family Court be dismissed because the Onondaga Family Court is an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment. *Braithwaite*, 2023 WL 4207907, at \*4 (collecting cases) (holding that the plaintiff's claims against the Chief Clerk of the Suffolk County Court in his official capacity are barred by the Eleventh Amendment).

### 6. Claims Against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily

Plaintiff's claims against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily relate to their capacities as Onondaga County Family Court judges. (*See generally* Dkt. No. 1.) As set forth above in Part IV.B.4. of this Order and Report-Recommendation, Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily in their individual capacities are immune from suit pursuant to the doctrine of absolute judicial immunity. Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, claims against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily in their official capacities are essentially claims against New York State, which is immune from suit pursuant to the Eleventh Amendment.

### 7. Claims Against Defendants DeRue and Domachowski

Plaintiff's claims against Defendants DeRue and Domachowski relate to their roles as Onondaga County Family Court support magistrates. (*See generally* Dkt. No. 1.) As set forth above in Part IV.B.4. of this Order and Report-Recommendation, Defendants DeRue and Domachowski in their individual capacities are immune from suit pursuant to the doctrine of absolute judicial immunity. *See Miller v. Primo*, 23-CV-1051, 2023 WL 6379325, at *6 (N.D.N.Y. Sept. 29, 2023) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against "Defendants DeRue and Domachowski, who acted as the support magistrate judges" and finding that such claims "are barred under the doctrine of judicial immunity"), *report and recommendation adopted by* 2023 WL 754323 (N.D.N.Y. Nov. 14, 2023) (Sannes, C.J.). Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, claims against Defendants DeRue and Domachowski in their official capacities are essentially claims against New York State, and are immune from suit pursuant to the Eleventh Amendment.

### 8. Claims Against Defendant Stanislaus

"The law is clear that court referees are entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties." *Khrapko v. Splain*, 389 F. Supp. 3d 199, 205 (W.D.N.Y. 2019) (citing *Green v. Kadilac Mortg. Bankers, Ltd.*, 936 F. Supp. 108, 115 (S.D.N.Y. 1996); *Weiss v. Feigenbaum*, 558 F. Supp. 265, 272 (E.D.N.Y. 1982)); *accord Witcher v. Moriber*, 21-CV-6168, 2022 WL 1085297, at *2 (E.D.N.Y. Apr. 11, 2022) (citing *Wilson v. Wilson-Polson*, 446 F. App'x 330, 331 (2d Cir. 2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit); *Topolski v. Wrobleski*, 13-CV-0872, 2014 WL 2215761, at *3 (N.D.N.Y. May 29, 2014) ("Judicial immunity is so broad that judges and referees 'are not liable to civil actions for their judicial acts, even when such acts ... are alleged to have been done maliciously or corruptly.' "); *Renner v. Stanton*, 13-CV-1676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (dismissing claims against Family Court Referee based on judicial immunity)).

**\*9** As a result, I recommend that Plaintiff's claim against Defendant Stanislaus in her individual capacity be dismissed based on the doctrine of absolute judicial immunity. *See Miller Ex v. Primo*, 22-CV-0680, 2022 WL 16556060, at *5 (N.D.N.Y. Sept. 29, 2022) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against Defendant Stanislaus because she was entitled to absolute judicial immunity as a court attorney referee), *report and recommendation adopted by* 2022 WL 16551700 (N.D.N.Y. Oct. 31, 2022) (Sannes, C.J.).

Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, any claim against Defendant Stanislaus in her official capacity is essentially a claim against New York State, which is immune from suit pursuant to the Eleventh Amendment.

### 9. Claims Against Defendant Bradshaw

Based on the allegations contained in the Complaint, it appears that Defendant Bradshaw was an attorney appointed to represent one of Plaintiff's minor children. (Dkt. No. 1 at ¶ 16.) The Second Circuit has held that "law guardians who act as 'attorney[s] for the child' are not state actors for the purposes of suits filed pursuant to § 1983." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015).

As a result, I recommend that Plaintiff's claims against Defendant Bradshaw be dismissed.

### 10. Claims Against Defendant Onondaga County Sheriff

Defendant Onondaga County Sheriff is merely a department of a municipality, and thus, is not amenable to suit. *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")) ("Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). As a result, I recommend that Plaintiff's claims against Defendant Onondaga County Sheriff be dismissed because it is not an entity amenable to suit. [6]

[6]    Even if Plaintiff's claims against Defendant Onondaga County Sheriff were liberally construed as against Onondaga County, I would recommend that they be dismissed. There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a discrete incident, during which an officer or individual employed by Defendant Onondaga County Sheriff did not act properly. (Dkt. No. 1 at 4.) There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Onondaga County.

### 11. Claims Against Defendant Hiscock Legal Aid

**\*10** The Complaint alleges that Defendant Hiscock Legal Aid and attorneys employed by it represented the mother of Plaintiff's minor children during the State Family Court proceedings. (Dkt. No. 1 at ¶ 5.) Notwithstanding the appointment of Defendant Hiscock Legal Aid as legal representation, it was not a state actor for purposes of 42 U.S.C. § 1983. "Although [Defendant Hiscock Legal Aid was] supplied and funded by the state, [it] act[ed] according to the best interests of [its] client with 'no obligation to the mission of the state.' " *Milan*, 808 F.3d at 964 (quoting *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986)) (internal quotation omitted).

As a result, I recommend that Plaintiff's claims against Defendant Hiscock Legal Aid be dismissed.

### 12. Claims Against Defendant Department of Health and Social Service

It is unclear based on the allegations in the Complaint if Defendant Department of Health and Social Service is a division of New York State or Onondaga County. To the extent that it is a department of New York State, it is immune from suit pursuant to the Eleventh Amendment as set forth in Part IV.B.1 of this Order and Report-Recommendation. To the extent that Defendant Department of Health and Social Service is a department of Onondaga County, it is not amenable to suit pursuant as set forth above in Part IV.B.10 of this Order and Report-Recommendation. [7]

[7]   Further, as set forth above in note 6, *supra*, to the extent that the Complaint is liberally construed as alleging a claim against Onondaga County, it fails to allege any basis for municipal liability.

### 13. Claims Against Defendants Milner and Unknown

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (Kahn, J.) (citing *Gonzalez v. City of New York*, 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

The Complaint names Milner and Unknown as defendants, but the body lacks any allegations of wrongdoing by these individuals. (*See generally* Dkt. No. 1.) As a result, I recommend that the claims against them be dismissed for failure to state a claim upon which relief may be granted.

For each of these alternative reasons, I recommend that the Complaint be dismissed in its entirety.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

[8]   *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

 **\*11**   Here, better pleading could not cure the deficiencies described above. As a result, I recommend that Plaintiff's Complaint be dismissed without leave to replead.

## VI. PLAINTIFF'S MOTION TO OBTAIN ECF LOGIN AND PASSWORD

In light of the recommended disposition of this case, Plaintiff's motion for ECF login and password is denied without prejudice. (Dkt. No. 3.) "Because this court is recommending dismissal at this time, the court will deny [P]laintiff's motion to obtain ECF privileges without prejudice." *Amato v. McGinty*, 17-CV-0593, 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017) (Baxter,

M.J.), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017) (D'Agostino, J.); *see Mahmood v. United States Gov't*, 20-CV-0207, 2020 WL 3965125, at *3 (N.D.N.Y. Mar. 17, 2020) (Stewart, M.J.) (same), *report and recommendation adopted*, 2020 WL 1808206 (N.D.N.Y. Apr. 9, 2020) (D'Agostino, J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to obtain an ECF login and password (Dkt. No. 3) is **DENIED without prejudice**; and it is further respectfully

**RECOMMENDED** that the **COURT DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[9]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2024 WL 1906594

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2399913
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ellis Davon DUDLEY, II, Plaintiff,

v.

Governor Kathy HOCUL et al., Defendants.

5:24-CV-48
|
Signed May 23, 2024

**Attorneys and Law Firms**

ELLIS DAVON DUDLEY, II, Plaintiff, Pro Se, P.O. Box 7124, Syracuse, NY 13261.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

 **\*1**  On January 11, 2024, *pro se* plaintiff Ellis Javon Dudley, II ("plaintiff") filed this action alleging that the named defendants violated his civil rights in connection with certain family-court proceedings being conducted under New York State law. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"), Dkt. No. 2, and for leave to file documents electronically, Dkt. No. 3.

On May 1, 2024, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application, denied his request to file electronically, and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed *without* leave to amend. Dkt. No. 5. As Judge Lovric explained, plaintiff's RICO claims were procedurally deficient and substantively meritless, while plaintiff's 42 U.S.C. § 1983 claims were barred by various claim-preclusion principles. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 5. Upon review for clear error, the R&R is accepted and will be adopted. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED without leave to amend.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 2399913

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

2022 WL 226798
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francesca AMATO, Plaintiff,

v.

Anthony MCGINTY, Defendant.

1:21-cv-00860 (GLS/TWD)
|
Signed 01/26/2022

**Attorneys and Law Firms**

FRANCESCA AMATO, Plaintiff, pro se, PO Box 774, Marlboro, NY 12542.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** Francesca Amato ("Plaintiff" or "Amato"), proceeding *pro se*, filed an action against Ulster County Family Court Judge Anthony McGinty ("Defendant" or "Judge McGinty"). (Dkt. No. 1.) This case is related to *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD). (Dkt. No. 5.[1]) Plaintiff has not paid the filing fee, but instead seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 16.) For the reasons discussed below, the Court grants Plaintiff's fourth IFP application (Dkt. No. 16) and recommends dismissal of the amended complaint (Dkt. No. 6) in its entirety.

[1]    Amato was terminated as party plaintiff in the related action by Order entered August 7, 2019. *See Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 73. The Court assumes familiarity with the related case.

**I. BACKGROUND**

Plaintiff initiated this action and moved to proceed IFP on July 30, 2021. (Dkt. Nos. 1, 2.) However, the initial pleading was not signed and Plaintiff was directed to submit a signed copy of the complaint. (Dkt. No. 5.) On August 13, 2021, Plaintiff submitted a signed copy of the complaint, but also attached five exhibits that were not submitted with the original pleading. (Dkt. No. 6.) As such, the signed pleading was docketed as the amended complaint.

Thereafter, by Orders filed October 28, 2021, November 17, 2021, and December 17, 2021, this Court denied Plaintiff's motions to proceed IFP. (Dkt. Nos. 8, 11, 14.) In the December 17, 2021, Order, Plaintiff was afforded one final opportunity to submit a fully completed IFP application or pay the entire filing fee by January 6, 2022. (Dkt. No. 14.) Despite the foregoing directive, Plaintiff's fourth IFP application was not filed until January 10, 2022. (Dkt. No. 16.)

**II. IFP APPLICATION**

Plaintiff declares in her fourth IFP application that she is unable to pay the filing fee. (Dkt. No. 16.) After reviewing the submission, the Court finds Plaintiff meets the requirement for economic need and thus her IFP application is granted.

**III. SUFFICIENCY OF THE AMENDED COMPLAINT**

## A. Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

 **\*2** In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

## B. Summary of the Amended Complaint

Plaintiff brings this action against Defendant in both his "judicial" and "individual" capacity. (Dkt. No. 6 at 1. [2] ) The amended complaint is written on a form complaint brought pursuant to the American with Disabilities Act ("ADA"). *Id.* at 1-4. Plaintiff also lists her minor child, C.A.B., as a plaintiff. *Id.* at 1, 5 ("Plaintiffs Francesca Amato & C.A.B. (hereafter, the 'Plaintiffs')— hereby makes these allegations against Defendant herein as follows[.]").

[2]     Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Her disabilities are listed as "ptsd" and "LAS," which she defines as "Legal Abuse Syndrome caused by defendant's actions and inactions." *Id.* at 2. She complains of the following conduct: denial of participation in public service or program, failure to make alterations to accommodate disability, retaliation, and others "in federal suit." *Id.* at 3. However, the section of the form complaint titled "Facts" is blank. *See id.* As to the "Prayer for Relief", Plaintiff states "see attached lawsuit." *Id.* at 4.

The "attached lawsuit" consists of 24 typewritten, single spaced pages, *id.* at 5-29, along with an additional 56 pages of exhibits. (Dkt. Nos. 6-1 through 6-5.) The "attached lawsuit" references the related action, *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), and Plaintiff states she is "requesting the right to re plead [and] I am also filing a new verified complaint due to ongoing abuse by the defendant." *Id.* at 5.

Plaintiff's amended complaint also references 42 U.S.C. § 1983. *See id.* at 5-6. Plaintiff claims the "policies, practices, procedures and standards established and/or maintained by Defendant violate the Due Process and Equal Protection Clauses of the

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 61 of 84
**Amato v. McGinty, Not Reported in Fed. Supp. (2022)**
2022 WL 226798

Fourteenth Amendments to the U.S. Constitution." *Id.* at 5. She also claims that "[u]nder color of authority, Anthony McGinty deprived me of my rights to my child, due process, and ADA rights were completely violated." *Id.* Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief. *Id.* at 5-6. She further states:

> **\*3** I demand my son's immediate return to his home with me at once and that a permanent restraining order is placed on this highly abusive Judge Anthony McGinty and also in his individual capacity as I feel he is a threat and danger to my family within his political power and lack of professionalism and boundaries. I'm also concerned with his mental state and feel he is unfit and I have overwhelming information and belief that he is an addict.

*Id.* at 26.

According to Plaintiff, "this is also a civil rights action brought pursuant to Title VII of the Civil Rights Acts of 1964" because Defendant authorized "unconstitutional, gender-biased contested Judgment of Custody polices, practices, procedures and standards." *Id.* at 6. Plaintiff contends Judge McGinty's "policies, practices, procedures and standards are gender biased, unconstitutional, have disparate impact on women and violate women's NYS entitled equal economic, property ownership and custody rights in contested Judgement of Custody Orders when domestic violence ("DV") exists." *Id.* at 7. Judge McGinty "has a history of court orders that change custody to abusive fathers and remove them from safe, loving caretakers with an extreme general bias against mothers." *Id.* at 11. Defendant also ignores the ACP address confidentially program of New York State. *Id.*

Generally, Plaintiff alleges that from "February 2019 to Ongoing" Defendant "enforced polices, practices, procedures, and standards that prevented Plaintiff from proving the Custody Orders issued by trial were based on the wrong legal standards, erroneous facts, a biased unconstitutional trial. And prevented me from being able to have my witnesses and my own testimony." *Id.* at 7. Defendant also "denied Plaintiff child access to his Service dogs and home status quo and private bedroom and consistent life needed to heal from past abuse." *Id.*

Plaintiff alleges Judge McGinty denied her "all ADA accommodations requested over and over orally and in writing and further abuse[d] his power by forcing plaintiff to draft own motions and train all parties in the ADA in order to protect my rights that continually are denied." *Id.*

She further claims Judge McGinty is "intentionally practicing and inflicting highly unlawful Discriminatory abuse upon [Plaintiff] due to [her] years of reputable advocacy and exposure of him." *Id.* at 6. He has also retaliated against her because of her "two time best-selling book, *Punished 4 Protecting: The Injustice of Family Court.*" *Id.* [3]

[3]     Plaintiff explains the book "talks about the ongoing abuse of Anthony McGinty and his ongoing abuse to my family for exposing him. I have been publicly outspoken long before he was put on my case in 2016. I've been exposing him since 2014 and my best selling book was published in 2018. He refuses to recuse from this case which I orally explained pre trial in 2019 that I would not only never receive a fair trial but that having to come before him after the tremendous harm he caused my son...." (Dkt. No. 6 at 14.)

Plaintiff explains that "anytime I enter the Family Court it will be the three of them [4] against me leaving an extremely unfair disadvantage, further harm and suffering and full control. I am constantly bullied and they cooperate together to continue to retaliate against me by using my child as their pawn. McGinty's actions have caused my son and I irreparable injury and each second this continues threatens to harm us indefinitely." *Id.* at 11.

4    Plaintiff appears to be referring to Defendant, along with "Child Attorney Amy Ingram and opposing Counsel Andy Gilday." (Dkt. No. 6 at 11.) The Court notes Amy Ingram was named as a defendant in the related case and all claims asserted against her were dismissed with prejudice. *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 13. The Court takes judicial notice that Amato, along with others, also filed suit against Judge McGinty, Amy Ingram, and Attorney Andrew Gilday (for his role as assigned counsel to Patrick Beesmer, C.A.B.'s father), Beesmer, and another individual in a previous action, also captioned *Amato v. McGinty*, 1:17-cv-00593 (MAD/ATB), ECF Dkt. No. 1. In that case, although Amato paid the filing fee, United States Magistrate Judge Baxter recommended, *inter alia*, that Amato's Section 1983 claims against Judge McGinty be dismissed with prejudice as barred by judicial immunity. *See id.*, ECF Dkt. No. 11. United States District Judge D'Agostino adopted the report-recommendation in its entirety and judgment was entered accordingly on September 15, 2017. *See id.* at ECF Dkt. Nos. 19, 20.

**\*4** Plaintiff claims "having pre diagnosed ptsd and LAS received zero ADA Accommodations requested and missed a court appearance on March 8, 2020." *Id.* at 12. According to Plaintiff, she missed the court appearance "due to stress and denial of rights combined with fear of [the] court causing further harm to my son and family and fear of further McGinty retaliation causing ptsd to be triggered." *Id.* She has "no recollection of being handed a slip" and did not put the March 8, 2020, court date on her calendar. *Id.* Plaintiff claims Defendant:

refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3 $^{rd}$ trial. I was thrown into trial and discriminated further bc I "did such a good job, I couldn't possibly have ptsd" this only proves that I didn't willfully miss a court date two days before our Country was on COVID quarantine but that with ptsd memory issues occur during high stress moments. McGinty used it as a legal loophole to strip me of all custody giving my son to his estranged father who barely had visits of 8 hours a month and abandoned the child in California after he was released from jail. McGinty was clearly Aware of all of this as he testified to it during the 2020 trial.

*Id.* at 13.

Plaintiff also claims Judge McGinty "intentionally ignores all emergency motions and puts them out months and months at a time; and takes hearsay from the father without any evidence or fact finding violating and taking/ away more rights." *Id.* at 14.

Plaintiff references the related case, and states that her ADA claims against Judge McGinty were dismissed in *Orr v. McGinty*, without prejudice and with leave to replead. *Id.* at 15. [5] According to Plaintiff, she is pursuing her "right to replead and add ongoing violations in current proceedings against Judge Antony McGinty and his ongoing abuse to me and my son C.A.B." *Id.* She explains that she "didn't continue at that time to fight this case because my son was returned to my sole custody on September 17, 2017[,] and we were healing from the damages and severe trauma." *Id.*

5    However, and contrary to Plaintiff's assertion, in the related action she was not afforded the "right to replead and add current ongoing violations" rather, Amato's Section 1983 claims against Judge McGinty were dismissed with prejudice and her Title II ADA claims were dismissed for failure to state a claim upon which relief may be granted. *Orr v. McGinty*, 1:17-CV-01280 (GLS/TWD), ECF Dkt. Nos. 47, 74.

Plaintiff states that she was diagnosed in 2016 and "orally and in writing has requested ADA Accommodations" "numerous" times to "let the court know" that Defendant has "withheld" her child's "full service therapy dogs" since October 2, 2020, amounting to "intentional and deliberate indifference." *Id.* at 15.

According to Plaintiff, "Anthony McGinty continues his abuse in the form of retaliation, abuse of power, extreme harm and pain and suffering, violations of ADA title ii [which resulted] in a final order dated October 2, 2020. Granting Patrick Beesmer sole physical custody [of C.A.B.] and all decision making power...." *Id.*

Plaintiff lists several ways Judge McGinty has "denied" her "reasonable accommodations" and "basic rights." *Id.* at 16-17. For example, she claims Judge McGinty failed to recuse himself and denied her a fair trial. *Id.* at 16. He also denied C.A.B. his "full

**Amato v. McGinty, Not Reported in Fed. Supp. (2022)**

2022 WL 226798

service therapy dogs since October 2, 2020." *Id.* Judge McGinty denied and restricted communication between Plaintiff and C.A.B., conspired with C.A.B.'s and Beesmer's attorneys, and omitted "strong evidence off the record," and "pushed several emergency motions out far past their legal requirements." *Id.* at 16-17. She also complains of "ongoing discrimination." *Id.* Plaintiff also alleges Judge McGinty failed to replace C.A.B.'s attorney with an "ethical" attorney. *Id.*

**\*5** She further alleges Judge McGinty lied in the October 2, 2020, Order which cited "concerns" in Plaintiff's home, without evidence, and falsely stated C.A.B.'s father's home "has no domestic violence." *Id.*

Additionally, on June 3, 2021, Judge McGinty denied C.A.B.'s "rights to his service dog again" and "showed preference to fathers" in that he gave C.A.B.'s father a "courtesy call" when he missed "virtual court" but did not extend the same courtesy to Plaintiff on March 8, 2021, when she failed to appear in court. *Id.* at 16. When she questioned Judge McGinty, he "falsely" explained that "virtual court is different from physical Court when someone doesn't show up we call them." *Id.*

Under a section of the amended complaint labeled "Damages" Plaintiff lists twelve "counts." *Id.* at 17-19. Plaintiff also lists five "counts" under Title II ADA Violations. *Id.* at 19. Plaintiff also devotes several pages to what appears to be excerpts and summaries of what she refers to as "Title II ADA Case Law re: Accommodations." *See id.* at 19-26.

As relief, Plaintiff seeks a temporary restraining order, a permanent restraining order, and preliminary injunction. *Id.* at 26, 28. Plaintiff is "seeking injunctive relief and a permanent restraining order against [Judge McGinty] to stop his abuse and allow us to have a fair trial with an unbiased Judge without any connections to him whatsoever to avoid any further harm." *Id.* at 9. She requests declaratory relief "to the effect" that Defendant's "actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws." *Id.* at 28.

Plaintiff seeks damages in the amount of at least $3,000,000. *Id.* at 27-28. Plaintiff asks this Court to "assume jurisdiction over this matter." *Id.* Plaintiff also wants this Court to "restore" her sole custody rights over her minor child. *Id.* at 28. She also asks for any further relief as the Court shall deem just and proper. *Id.* [6]

[6]    Plaintiff also seeks attorneys fees pursuant to 42 U.S.C. § 1988 and the Equal Access to Justice Act. (Dkt. No. 6 at 28.) However, as she was informed in the related action, *pro se* plaintiffs are not entitled to such fees. *Orr v. McGinty*, No. 1:17-cv-01280, ECF Dkt. No. 47 at 3 n.6 (citing *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994)).

For a complete statement of Plaintiff's claims, reference is made to the amended complaint. (*See generally* Dkt. No. 6.)

### C. Discussion

Initially, the Court finds the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV 4768, 1998 WL 832708, \*1 (S.D.N.Y. Nov. 30, 1998) (citations omitted). The statement should be "short and plain" because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **\*6** (b) Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 64 of 84

**Amato v. McGinty, Not Reported in Fed. Supp. (2022)**

2022 WL 226798

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A complaint that does not comply with these Rules "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted).

The amended complaint contains rambling legal arguments, numerous disjointed sentences, and repeated conclusory allegations. (Dkt. No. 6.) Moreover, while the amended complaint contains some numbered sections, the numbering is of limited value since some of the numbered sections contain numerous sentences, and/or contain multiple paragraphs, and/or are repeated. *Id.* As a result, it is difficult for the Court to determine the sufficiency of Plaintiff's allegations, and it would be difficult for Defendant to shape a comprehensive defense. As such, the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

However, the Court refrains from recommending dismissal on this basis alone because the amended complaint does not quite rise to the level of being "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Rather, this action represents yet another lawsuit whereby Plaintiff is complaining of Defendant's handing of and decisions issued in family court proceedings. Construed liberally, Plaintiff seeks to nullify family court and custody determinations issued by Defendant, and asks this Court to restore her sole custody, requests declaratory and injunctive relief, and monetary compensation. As such, in accordance with 28 U.S.C. § 1915(e), the Court will review the sufficiency of the amended complaint.

### 1. Minor Plaintiff

As Plaintiff is aware, an individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Amato v. McGinty*, No. 1:17-CV-00593 (MAD/ATB), 2017 WL 4083575, at *4 (N.D.N.Y. Sept. 15, 2017) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007))); *see also Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 1 n.1, 13 (plaintiff-mothers cannot bring an action "as next of friend for their minor children" and directing the Clerk to amend the caption to remove all references to the minor children). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Amato v. McGinty*, 2017 WL 4083575, at *4 (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

 **\*7** Therefore, the Court does not construe the amended complaint to include any claims or causes of action brought on behalf of C.A.B. The Court also recommends that the Clerk be directed to amend the docket to remove all references to C.A.B.

### 2. Section 1983

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

As noted, Plaintiff has named Judge McGinty as the sole defendant in his "judicial" and "individual" capacity. However, and as Plaintiff was previously informed in the related action, Plaintiff's Section 1983 claims against Judge McGinty are barred by the Eleventh Amendment and judicial immunity. [7] *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

*4 (dismissing Amato's Section 1983 claims against Judge McGinty with prejudice); *Treistman v. McGinty*, No. 1:16-cv-1403, 2018 WL 4078262, at *1 (N.D.N.Y. Aug. 27, 2018) (finding the plaintiff's claims against the individual defendants in their official capacity as Family Court employees are barred by the Eleventh Amendment); *see also Amato v. McGinty*, 2017 WL 4083575, at *4. The same result is required here.

7  Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *Martinez v. Queens Cty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at *8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); *McKnight v. Middleton*, 699 F.Supp.2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit.").

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation [.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

 *8 As detailed above, Plaintiff has brought several allegations against Judge McGinty, including that he violated her constitutional rights, conspired with other individuals, endangered the welfare of C.A.B., denied her "accommodations," and retaliated against her for being outspoken about Judge McGinty's purported abuses and discrimination against mothers and children. However, all of the acts described in the amended complaint arise out of family court proceedings before Judge McGinty, the functions complained of were ones normally performed by a judge, and Plaintiff was a party who dealt with Judge McGinty in his judicial capacity. Plaintiff has not alleged that Judge McGinty took nonjudicial actions or that he acted in the absence of jurisdiction. Notwithstanding Plaintiff's allegations that Judge McGinty made improper adverse rulings against Plaintiff during the custody proceedings with malice or in retaliation for her "exposing" abuses in Family Court, Judge McGinty was still performing judicial functions and presiding over Plaintiff's custody action in Ulster County Family Court. As stated above, a judge does not lose his or her judicial immunity because he is accused of acting with malice or corruptly. Accordingly, Judge McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13; *Bliven*, 579 F.3d at 210.

Judge McGinty is also protected under sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a Section 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge McGinty, a member of the Ulster County Family Court, which is part of the New York Unified Court System. N.Y. Const. Art. VI, §§ 1, 13. All of Judge McGinty's alleged constitutional violations occurred while he acted within his official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge McGinty should be dismissed, because "a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred." *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citations omitted).

Moreover, Plaintiff is not entitled to injunctive relief because she "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Plaintiff entitled to declaratory relief because she alleges only past conduct and does not seek to prevent an ongoing or future violation of federal

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the "specific allegations target[ed] past conduct" and the "remedy [was] not intended to halt a present, continuing violation of federal law")).

The Court therefore recommends dismissing Plaintiff's Section 1983 claims against Judge McGinty under the doctrines of judicial and sovereign immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *see also Montero*, 171 F.3d at 760 ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " (quoting *Neitzke*, 490 U.S. at 327)).

### 3. Title VII

Title VII provides that "[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a); *see Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Here, Plaintiff claims in conclusory fashion that Judge McGinty "discriminates" against women in violation of Title VII. Plaintiff does not, however, allege employment discrimination or that she is or was an employee of Judge McGinty and, therefore, the claim is frivolous. [8] *See Jones v. Thomas*, No. 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, No. 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption."). Since Title VII claims are to be raised against a plaintiff's employer, there is no proper Title VII defendant in this case. *Militinska-Lake v. Kirnon*, No. 1:20-CV-443 (TJM/CFH), 2021 WL 3569807, at *9 (N.D.N.Y. Aug. 11, 2021) ("As a general rule, the proper defendant in a Title VII case against a State entity is the actual department or agency that employs the plaintiff.") (citation omitted).

[8]  Moreover, "[i]t is axiomatic that 'Title VII does not impose liability on individuals.' " *Hamlett v. City of Binghamton*, No. 3:20-CV-880 (GLS/ML), 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted)); *see also Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) ("[I]ndividuals are not subject to liability under Title VII.") (quotation marks and citation omitted).

**\*9**  Accordingly, the Court recommends that Plaintiff's Title VII claims against Judge McGinty be dismissed.

### 4. ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead an ADA claim, a plaintiff must allege: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted).

2022 WL 226798

As discussed, Plaintiff has utilized a form ADA complaint, largely alleges disability due to PTSD, and claims Judge McGinty denied her "accommodations" and "retaliated" against her during family court proceedings. For reasons set forth below, Plaintiff's purported disability-based claims under the ADA must also be dismissed.

First, to the extent Plaintiff asserts ADA claims against Judge McGinty in his individual capacity, such claims fail as a matter of law because there is no individual liability under Title II of the ADA. *See Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that defendants cannot be sued in their individual capacities for violating Title II of the ADA); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("the retaliation provision of the ADA ... cannot provide for individual liability"); *Myers v. N.Y.-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at *9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."); *Netti v. Ayers*, No. 17-CV-976, 2017 WL 7542494, at *18 (Oct. 5, 2017) ("individuals cannot be held liable under the ADA") (citing cases). Thus, Plaintiff's ADA claims against Judge McGinty, insofar as he is sued in his individual capacity, must be dismissed. [9]

[9] The Court notes judicial immunity also extends to Plaintiff's ADA claims for damages. *See Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 47 at 5 (citing *Brooks v. Onondaga Cty. Dep't of Children & Family Servs.*, 5:17-CV-1186, 2018 WL 2108282, at *4 (N.D.N.Y. Apr. 9, 2018) (collecting cases)).

Even if the Court assumes for purposes of initial review only, that Plaintiff was disabled during the state court proceedings within the meaning of the ADA, and Judge McGinty was a proper defendant in his official capacity, [10] her assertions do not show that Judge McGinty discriminated or retaliated against her because of her PTSD. It is not enough for Plaintiff to state that she is disabled and that bad things happened to her in the state court proceedings; she must allege facts from which a reasonable trier of fact could infer that these things happened to her because of discrimination on the basis of her disability. The use of "buzz words" such as "disability," "accommodation," and "retaliation" does not cure a pleading defect such as the one herein. *See Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). She does not allege any facts suggesting a plausible connection between her alleged PTSD and "LAS" and the actions that were taken against her in the state court proceedings. Rather, Plaintiff merely states she "has no recollection of being handed a slip" regarding the March 8, 2020, court date that she missed. Moreover, Plaintiff's passing reference that she "requested audio of the court hearings so that I can have time to listen to prepare as *pro se* for continuing proceedings" or that Judge McGinty "refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial" are insufficient to state a claim. (Dkt. No. 6 at 13, 14.)

[10] As observed in the related case, "It is questionable whether defendants, even when sued in their official capacities, are public entities." *Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 74 at 4 n.4 (citing *Santiago v. Garcia*, 70 F. Supp. 2d 84, 89 (D. P.R. 1999) (holding state court judge sued in official capacity was not "public entity" under Title II); *but see Shollenberger v. N.Y. State Unified Court Sys.*, 18 CV 9736, 2019 WL 2717211, at *5 (S.D.N.Y. June 28, 2019) (allowing ADA claims seeking prospective injunctive relief to proceed against Chief Judge of the State of New York and Chief Administrator of the New York State Unified Court System because "a plaintiff need only allege the defendant[s] ha[ve] responsibility for the alleged conduct and the ability to redress the alleged violations")).

**\*10** In light of the foregoing, the Court recommends dismissing Plaintiff's ADA claims, if any, against Judge McGinty. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Domestic Relations Exception, *Rooker-Feldman* [11] Doctrine, and *Younger* [12] Abstention

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 68 of 84

2022 WL 226798

11  *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923).

12  *Younger v. Harris*, 401 U.S. 37 (1971).

Due to the nature of Plaintiff's amended complaint, it is difficult to precisely determine exactly which doctrines apply, but based upon the relief sought, even if Plaintiff had sued an appropriate defendant, her claims are also likely barred by the *Rooker-Feldman* doctrine, domestic relations exception, and/or *Younger* abstention.

### a. Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Here, in order to return custody of C.A.B. to Plaintiff, or to "enjoin" the state court's orders, this Court would have to re-determine Judge McGinty's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Accordingly, to the extent the amended complaint is seeking a child custody decree from the Court, the court lacks jurisdiction to adjudicate such a claim. *See, e.g.*, *Amato v. McGinty*, No. 17-CV-593 (MAD/ATB), 2017 WL 9487185, at *8 (N.D.N.Y. Jun. 6, 2017) *report and recommendation adopted* by 2017 WL 4083575 (N.D.N.Y. Sept. 15. 2017).

### b. *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, such claims may be barred by the *Rooker-Feldman* doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.")). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

*11  The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, it appears Plaintiff "lost" in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. *See* Dkt. No. 6 at 29. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.

2022 WL 226798

c. *Younger* Abstention

In the event the underlying state court proceedings remain pending, Plaintiff's request for this Court's involvement may also implicate the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73. "[T]here can be no doubt that a custody dispute ... raises important state interests." *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) (citation omitted).

Accordingly, to the extent that the child custody issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, No. 03-CV-2359, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

## IV. LEAVE TO AMEND

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with the plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except for Plaintiff's ADA claim seeking prospective injunctive relief.

**\*12** Nevertheless, in light of Plaintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review. *See, e.g., Orr v. McGtiny*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 10-11. [13] As such, the Court recommends this claim be dismissed without prejudice and with leave to amend. [14]

---

[13]    At this juncture, the Court expresses no opinion on the sufficiency of any such claim.

[14]    If the District Court adopts this Report-Recommendation, and if Plaintiff chooses to file a second amended complaint, the pleading must comply with Rules 8 and 10 of the Federal Rules. The revised pleading will replace the amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). The revised pleading should not attempt to resurrect any claims dismissed with prejudice in this action and/or claims brought or could have been brought in the related case. *See Lopez v. Jet Blue Airways*, No. 12-CV-0057,

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 70 of 84

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

2012 WL 213831, at *2 (E.D.N.Y. Jan. 24, 2012) ("Under the doctrine of *res judicata*, once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose.").

## V. PLAINTIFF'S ADDRESS

Under this Court's rules, an unrepresented litigant is under a duty to inform the Court of any address changes in writing. L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. To date, all the Court's Orders mailed to Plaintiff's address on file have been returned as undeliverable. (Dkt. Nos. 10, 12, 15.)

In an extraordinary display of special solicitude to Plaintiff as a *pro se* litigant, the Clerk was directed to mail a one-time courtesy copy of each Order at the confidential and redacted address indicated on the envelope of Plaintiff's submissions to the Court and as verbally provided to the Clerk on December 1, 2021. (*See generally* Docket Report; *see* Dkt. Nos. 11, 14. [15] ) However, Plaintiff must file a change of address IN WRITING within thirty days, and she must continue to submit any address changes to the Court as long as her action is pending. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

[15]    While not entirely clear to the Court, it appears this "confidential" address differs from Plaintiff's residence, while the PO Box on file is the business address for Plaintiff's "home office" Punished 4 Protecting. (*See* Dkt. No. 16.)

## VI. CONCLUSION

**WHEREFORE**, after carefully considering this matter, and for the reasons explained above, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 16) is **GRANTED**; [16] and it is further

[16]    Plaintiff should note that although her IFP application has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

 **\*13  RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that all claims be **DISMISSED WITH PREJUDICE** except that Plaintiff's ADA claim for prospective injunctive relief be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**; and it is further

**RECOMMENDED** that the Clerk be directed to amend the docket to remove all references to C.A.B., and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within **THIRTY DAYS** of the date of the Report-Recommendation, and she must continue to submit any address changes to the Court as long as this action is pending; failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action; and it is further

**ORDERED** that the Clerk mail a copy of this Order and Report-Recommendation to Plaintiff at the address listed on the docket and to mail a **FINAL** one-time courtesy copy to the confidential and redacted address indicated on the envelope of Dkt. No. 16 and as verbally provided to the Clerk on December 1, 2021.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. [17] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

**Amato v. McGinty, Not Reported in Fed. Supp. (2022)**

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 71 of 84

2022 WL 226798

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

17    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 226798

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Brooks v. Onondaga County Department of Children &..., Not Reported in Fed....

2018 WL 2108282

KeyCite Yellow Flag - Negative Treatment

Distinguished by   Marshall v. New York State Public High School Athletic Association, Inc.,   W.D.N.Y.,   March 15, 2019

2018 WL 2108282
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rochelle BROOKS, formerly Rochelle Coleman, Plaintiff,

v.

ONONDAGA COUNTY DEPARTMENT OF CHILDREN & FAMILY SERVICES, et al., Defendant.

5:17-CV-1186 (GLS/TWD)

|

Signed 04/09/2018

**Attorneys and Law Firms**

ROCHELLE BROOKS, formerly, ROCHELLE COLEMAN, 231 Lilac Street, Syracuse, New York 13208, pro se.

## ORDER AND REPORT-RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

## I. INTRODUCTION

 **\*1**  On October 25, 2017, Plaintiffs Rochelle Brooks, formerly Rochelle Coleman, individually and on behalf of her two minor daughters F.B. and H.B., submitted two complaints she wished to file in a single action to the Clerk. (Dkt. Nos. 1 and 1-1.) One of the complaints was brought under 42 U.S.C. § 1983. (Dkt. No. 1.) The second was brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., as amended. (Dkt. No. 1-1.) The Onondaga Department of County Children & Family Services ("Children and Family Services"), Syracuse Police Department, and Onondaga County Family Courthouse ("Family Court") were named as Defendants in the § 1983 complaint. (Dkt. No. 1 at 1-2. [1] ) Onondaga County Family Court Judge, the Hon. Michael L. Hanuszczak, and Children and Family Services were named as Defendants in the ADA action. (Dkt. No. 1-1 at 1-2.)

[1]     Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

Plaintiff Brooks also submitted an application to proceed in forma pauperis (Dkt. No. 2) and a motion for appointment of counsel. (Dkt. No. 3.) Plaintiff's in forma pauperis application was granted by the Court and her motion for appointment of counsel was denied without prejudice in an Order filed on December 18, 2017. (Dkt. No. 8 at 7-8.)

In its December 18, 2017, Order, the Court determined that initial review under 28 U.S.C. § 1915(e) was premature because Plaintiff Brooks had named her minor daughters as Plaintiffs, and non-lawyer parents cannot represent their children pro se. Id. at 5-6. See Cheung v. Youth Orchestra Foundation of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990). The Court ordered that the case be stayed for ninety days to allow Plaintiff Brooks to "retain counsel with regard to all claims being pursued on behalf of her minor children, to move for appointment of counsel for her minor children, or to file amended complaints deleting her minor children as Plaintiffs and deleting all claims asserted on behalf of [her] minor children." (Dkt. No. 8 at 7.)

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 73 of 84

Brooks v. Onondaga County Department of Children &..., Not Reported in Fed....

2018 WL 2108282

## II. PLAINTIFF'S AMENDED COMPLAINT

On March 19, 2018, Plaintiff Brooks refiled her original complaints on which she had crossed out her minor children F.B. and H.B. as Plaintiffs and added the word "amended. (Dkt. No. 9.) The amended complaints are in all other respects identical to the originals. (*See* Dkt. Nos 1, 1-1, and 9.)

In her amended § 1983 complaint, Plaintiff alleges that Children and Family Services unlawfully seized her two daughters without a warrant, court order, or probable cause, and unlawfully arrested Plaintiff. (Dkt. No. 9 at 2.) Plaintiff has also alleged in conclusory fashion violations by the Defendants of criminal statutes at 18 U.S.C. §§ 241 and 242, N.Y. RPAPL § 755, and fruits of the poisonous tree, unlawful arrest, perjury, corruption, treason, and kidnaping. *Id.* at 3. Plaintiff seeks damages in the amount of ten million dollars for retaliation, and three million dollars for the third unlawful seizure of her daughters, mental anguish, harassment, duress, and punitive damages for the hardship Plaintiff and her daughters have suffered. *Id.* at 4.

**\*2** In her amended ADA complaint, Plaintiff alleges that she suffers from brain or lung cancer, migraines, memory loss, vision loss, asthma, COPD, arthritis, degenerative joint disease, back and neck arthritis pain, and walking limitations. *Id.* at 6. Plaintiff claims that Judge Hanuszczak violated the ADA by making her appear in court at the last minute, or having a hearing without her by scheduling appearances in two courts at almost the same time. *Id.* at 3. Plaintiff alleges Children and Family Services violated 18 U.S.C. §§ 241 and 242, and also that they violated N.Y. CPLR §§ 4501 through 4548 (state court civil evidentiary rules) by committing perjury, fraud, and evidence and witness tampering to justify removing/seizing Plaintiff's two daughters from her home three times. *Id.* at 7. Plaintiff is seeking reversal of the Family Court decision and return of her two daughters, along with ten million dollars in damages for the retaliation Plaintiff and her daughters were required to suffer, $86,400 × 4 dollars for each month Plaintiff's daughters were deprived of their family and family bond, and three million for the defamation, duress, and cruel and unusual hardship the Plaintiffs were forced to endure. [2] *Id.* at 8.

---

[2]    Inasmuch as Plaintiff's minor daughters are no longer parties, the Court will disregard Plaintiff's damages claim on their behalf in its initial review of the amended complaints.

## III. INITIAL REVIEW

Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). [3]

---

[3]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

In reviewing a *pro se* complaint, the Court has the duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the Plaintiff has stated "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged but

---

2018 WL 2108282

it has not "show[n] that the pleader is entitled to relief." *Id.* at 679 (quoting Federal Rule of Civil Procedure 8(a)(2) ). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotations marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed.Appx. 102, 104 (2d Cir. 2009).

**\*3** Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

## IV. ANALYSIS

In conducting an initial review under 28 U.S.C. § 1915(e), the Court will treat Plaintiff's two complaints as a single action.

### A. Claims in Plaintiff's Amended § 1983 Complaint

In her § 1983 claim, Plaintiff has alleged violation of 18 U.S.C. §§ 241 and 242 by Defendants Children and Family Services, Syracuse Police Department,[4] and the Onondaga Family Court.[5] However, 18 U.S.C. §§ 241 (criminal conspiracy) and 242 (criminal deprivation of rights under color of law) are criminal statutes that afford no private right of action. *See Hill v. Didio*, 191 Fed.Appx. 13, 14 (2d Cir. 2006) (no private right of action under 18 U.S.C. §§ 241 and 242) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994) ). Therefore, the Court finds Plaintiff has failed to state a § 1983 claim against the three Defendants under either of those provisions.

[4]   As the Court has previously explained to Plaintiff, the Syracuse Police Department does not have the capacity to be sued as an entity separate from the City of Syracuse. *See Coleman v. Syracuse Police Department*, No. 5:16-CV-00836 (LEK/TWD), 2016 WL 4411339, at \*3 (N.D.N.Y. July 22, 2016). Therefore, the Court will deem the City of Syracuse to be the named Defendant in its initial review.

[5]   The New York State Unified Court System, of which the Onondaga County Family Court is a part, as an arm of the State, is protected from Plaintiff's suit by the State's Eleventh Amendment sovereign immunity. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010) (citing *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) ). Therefore, Plaintiff's claims against the Onondaga County Family Court are barred by the Eleventh Amendment.

Plaintiff has also alleged a state law claim for abuse of process under N.Y. RPAPL § 755 against all three Defendants. RPAPL § 755 provides for a stay of proceedings or an action for rent upon failure to make repairs. Inasmuch as the Court is recommending that all of Plaintiff's federal claims against Defendants be dismissed with prejudice and without leave to amend, it also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, without prejudice to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of all of Plaintiff's federal claims with prejudice and without leave to amend. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006).

Plaintiff has failed to allege any facts whatsoever plausibly showing viable federal claims against any of the Defendants for fruits of the poisonous tree, perjury, corruption, treason, and kidnaping. To the extent Plaintiff intends to plead state law claims, the Court recommends that the District Court decline to exercise supplemental jurisdiction.

Plaintiff's wholly conclusory assertion of unlawful arrest likewise fails to state a false arrest claim under the Fourth Amendment. The elements of a § 1983 claim for false arrest in violation of the Fourth Amendment are "(1) the defendant intended to confine

Brooks v. Onondaga County Department of Children &..., Not Reported in Fed....

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 75 of 84

2018 WL 2108282

[the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (internal citation and quotations marks omitted). Probable cause is a complete defense to a false arrest claim. *Id.*

**\*4** The sole factual allegation in Plaintiff's amended complaint regarding her false arrest claim is that Children and Family Services "unlawfully seized my two daughters, without warrant, court order, or any probable cause, history of any crime & unlawfully arrested me, seized my two daughters ... in retaliation." (Dkt. No. 9 at 2.) In order to "establish a claim for false arrest under § 1983, a plaintiff must show that the defendant intentionally confined him without his consent and without justification." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (citation and internal quotation marks omitted). Conclusory allegations are insufficient to state a claim, and Plaintiff has failed to allege facts regarding the charge on which she was arrested and the facts and circumstances surrounding the alleged arrest, and she has not made a plausible showing that she was taken into physical custody and confined without consent or justification. *See Lacey v. Yates County*, 30 F. Supp. 3d 213, 226 (W.D.N.Y. 2014) ("The heart of a false arrest claim is a being taken into physical custody.")

Based on the foregoing, the Court finds that Plaintiff has failed to state a claim under § 1983 against Children and Family Services and the City of Syracuse, and that her § 1983 claim against Onondaga County Family Court is barred by the Eleventh Amendment. Therefore, the Court recommends dismissal with prejudice and without leave to amend of Plaintiff's § 1983 claims as set forth in her § 1983 amended complaint against the City of Syracuse, the Onondaga County Court, and Children and Family Services. [6] (Dkt. No. 9 at 1-4.)

[6]    Although leave to amend is to be freely granted to pro se plaintiff, the Court declines to recommend that Plaintiff be granted leave to amend her false arrest claim in this case because her single conclusory allegation that she was "unlawfully arrested" (Dkt. No. 9 at 2), even liberally read, is insufficient to give any indication that Plaintiff would be able to state a valid claim if given the opportunity. *See Cuoco*, 222 F.3d at 112. [Editor's Note: Appended decisions have been deleted for online purposes.]

### B. Claims in Plaintiff's Amended ADA Complaint

#### 1. ADA Claim Against Judge Hanuszczak

Plaintiff alleges that Family Court Judge Hanuszczak violated her rights under the ADA by my making her appear in court at the last minute, having an ex parte hearing without serving her, or scheduling her to appear in two courts at the same time or close to the same time. (Dkt. No. 9 at 7.) It is well-settled that judges generally have absolute judicial immunity from suits for money damages for their judicial actions. *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). The fact that a plaintiff is asking for non-money damages as well is of no consequence to the application of the doctrine of judicial immunity. *See DiPasquale v. Milin*, 303 F. Supp. 2d 430 432 (S.D.N.Y. 2004). Absolute immunity extends to any actions taken within the scope of a judge's judicial responsibilities or within his jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 9-12 (1991).

Courts in this Circuit and others have found judicial immunity to extend to claims under the ADA. *See Richter v. Connecticut Judicial Branch*, No. 3:12cv1638 (JBA), 2014 WL 1281444, at \*10 (D. Conn. Mar. 27, 2014) [7] (dismissal of ADA claim on judicial immunity grounds where alleged denial of ADA accommodations related to court's control over ongoing proceedings and managing the court's docket); *Positano v. New York*, No. 12-CV-2288 (ADS) (AKT), 2013 WL 880329, at \*4 (E.D.N.Y. Mar. 7, 2013) (plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692 (S.D.N.Y. 2011) (dismissing an action that included an ADA claim against three state judges on judicial immunity grounds); *see also Goldblatt v. Doerty*, 503 Fed.Appx. 537 (9th Cir. 2013) ("The district court properly dismissed Goldblatt's claims regarding defendant's alleged denial of ADA accommodations be they arose out of defendant's rulings in his capacity as a judge presiding over a state court family law proceeding, and, therefore, they were barred by absolute judicial immunity.")

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 76 of 84

Brooks v. Onondaga County Department of Children &..., Not Reported in Fed....

2018 WL 2108282

7    Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**\*5** Plaintiff claims Judge Hanuszczak violated her rights under the ADA in the scheduling of hearings involving custody of her children. (Dkt. No. 9 at 7.) As noted above, absolute judicial immunity applies to ADA claims related to the court's control over ongoing proceedings and managing the court's docket. *See Richter*, 2014 WL 1281444, at \*10. Therefore, the Court finds that Judge Hanuszczak is entitled to absolute judicial immunity with regard to Plaintiff's claims against him and recommends dismissal of the action with prejudice and without leave to amend against Judge Hanuszczak.

2. Claim Against Children and Family Services

Plaintiff alleges again in her amended ADA complaint that Child and Family Services violated criminal statutes 18 U.S.C. §§ 241 and 242. (Dkt. No. 9 at 7.) As noted above those criminal statutes afford Plaintiff no private right of action, *see Hill,* 191 Fed.Appx. at 14, and the Court has recommended that those claims be dismissed with prejudice and without leave to amend.

Plaintiff also appears to allege state law claims for perjury, fraud, and evidence and witness tampering in violation of the New York State court civil rules of evidence set forth in CPLR 4501 through 4548, to get her children removed from her home unlawfully three times. (Dkt. No. 9 at 7.) As with Plaintiff's other state law claims, the Court is recommending that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Kolari,* 455 F.3d at 120.

**C. Motion for Appointment of Counsel**

Plaintiff filed a second motion for appointment of counsel with her amended complaints. (Dkt. No. 10.) Plaintiff claims she was denied representation by legal services because she has been black-balled. *Id.* Even if the Court were not recommending dismissal of both of Plaintiff's amended complaints, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel). Therefore, the motion is denied. The denial is without prejudice so that Plaintiff will not be precluded from making a subsequent motion for appointment of counsel in the event the District Court allows the action to proceed.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 10) is **DENIED WITHOUT PREJUDICE**; and it is

**RECOMMENDED** that Plaintiff's action (Dkt. No. 9 at 1-8) be **DISMISSED IN ITS ENTIRETY**; and it is further

**RECOMMENDED** that Plaintiff's amended 42 U.S.C. § 1983 complaint (Dkt. No. 9 at 1-4) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e), with the exception of Plaintiff's state law claim under N.Y. RPAPL 755; and it is further

**RECOMMENDED** that Plaintiff's amended ADA complaint (Dkt. No. 9 at 5-8) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e), with the exception of Plaintiff's state law claims for perjury, fraud, and evidence and witness tampering in violation of CPLR 4501 through 4548; and it is further

**RECOMMENDED** that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims under claim under N.Y. RPAPL 755 (Dkt. No. 9 at 4) and those for perjury, fraud, and evidence and witness tampering alleged to be in violation of CPLR 4501 through 4548, *id.* at 7; and it is hereby

Brooks v. Onondaga County Department of Children &..., Not Reported in Fed....

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 77 of 84

2018 WL 2108282

**ORDERED**, that the Clerk send Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**\*6** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[8] If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2108282

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Brooks v. Onondaga Department of Children & Family Services, Not Reported in Fed....

2018 WL 2108187

2018 WL 2108187
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rochelle M. BROOKS, formerly Rochelle M. Coleman, Plaintiff,

v.

ONONDAGA DEPARTMENT OF CHILDREN & FAMILY SERVICES et al., Defendants.

5:17-cv-1186 (GLS/TWD)
|
Signed 05/07/2018

**Attorneys and Law Firms**

Rochelle M. Brooks, 231 Lilac Street, Syracuse, NY 13208, Pro Se.

**ORDER**

Gary L. Sharpe, Senior District Judge

**\*1** On April 9, 2018, Magistrate Judge Thérèse Wiley Dancks issued an Order and Report-Recommendation (R&R), which recommends the dismissal of the amended complaint. [1] (Dkt. No. 11.) Pending before the court is the objection of plaintiff Rochelle M. Brooks, formerly Rochelle M. Coleman. (Dkt. No. 13.)

[1]    As noted by Judge Dancks, (Dkt. No. 11 at 1-2), the amended complaint consists of two separate form complaints, the former labeled "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983," and the latter "Complaint Pursuant to the Americans With Disabilities Act," (Dkt. No. 9, at 1, 5).

Brooks' objection consist of a single, generic sentence, which states that she "object[s] to [her] cases being dismissed [sic] on the grounds of EQUITABLE TOLLING Law & [her] 1st & 4th Amendment rights violation." (*Id.* at 1.) Because Brooks' objection fails to fault the R&R in any specific way, it is classified as a general objection and warrants review for clear error only. *See Almonte v. N.Y. State Div. of Parole*, No. Civ. 904CV484, 2006 WL 149049, at \*5-6 (N.D.N.Y. Jan. 18, 2006). After careful consideration of the R&R, the court finds no clear error and adopts the R&R, (Dkt. No. 11), in its entirety. As such, Brooks' federal claims are dismissed with prejudice, and the court declines to exercise supplemental jurisdiction of the state law claims.

Accordingly, it is hereby

**ORDERED** that the Order and Report-Recommendation (Dkt. No. 11) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Brooks' amended complaint (Dkt. No. 9) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close the case; and it is further

**ORDERED** that the Clerk provide a copy of this Order to Brooks in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2108187

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 80 of 84

Treistman v. McGinty, Not Reported in Fed. Supp. (2018)

2018 WL 4078262

2018 WL 4078262
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ben Gary TREISTMAN, Plaintiff,
v.
Anthony MCGINTY et al., Defendants.

1:16-cv-1403 (GLS/CFH)
|
Signed 08/27/2018

**Attorneys and Law Firms**

Ben Gary Treistman, Shady, NY, pro se.

Mark G. Mitchell, New York State Attorney General, Albany, NY, for Defendants.

## SUMMARY ORDER

Gary L. Sharpe, U.S. District Judge

**\*1** Plaintiff *pro se* Ben Gary Treistman brings this action under 42 U.S.C. §§ 1981, 1983, and 1985(3), alleging that his due process rights were violated in connection with a child custody hearing in Ulster County Family Court. (Compl., Dkt. No. 1.) Specifically, he alleges that defendant Anthony McGinty, the Family Court judge who presided over the custody hearing involving his minor child; defendant Donna Wiener, the court secretary; and various unnamed scheduling clerks who "assist[ed] ... McGinty during [Treistman]'s [custody proceeding] as to scheduling trial dates" violated his due process rights [1] by allowing the hearing to last longer than ninety days. [2] (*Id.* at 2, 6-8.) He alleges that this violation was "motivated in part by a discriminatory purpose of gender discrimination." (*Id.* ¶¶ 26, 29, 32, 35, 38, 41, 44.) Furthermore, he alleges that the "[New York] State Family Court[ ] [System] permitted the other ... defendants to operate in a discriminatory motive and fashion, yet did nothing to correct those actions." (*Id.* ¶ 47.) Treistman seeks monetary damages as well as injunctive and declaratory relief. [3] (*Id.* ¶¶ 58-73.) Pending is defendants' motion to dismiss. (Dkt. No. 16.)

[1]    Triestman does not specify whether his claims concern his substantive or procedural due process rights (or both). (*See, e.g.*, Compl. ¶¶ 30, 48.)

[2]    Treistman premises his claims on a violation of a New York State regulation. *See* N.Y. Comp. R. & Regs. tit. 22, § 205.14 ("In any proceeding brought pursuant to section 467, 651 or 652 of the Family Court Act to determine temporary or permanent custody or visitation, once a hearing or trial is commenced, it shall proceed to conclusion within 90 days."). As alleged, the underlying custody hearing, which commenced on July 31, 2013 and ended on February 1, 2016, was clearly in excess of ninety days. (Compl. ¶ 12.) The complaint purports to assert seven counts based on the excessive length of the proceeding; however, that is only because after outlining the aggregate trial duration, (*id.* ¶ 25), Treistman adds a separate count for each "intra-trial" delay exceeding ninety days, (*id.* ¶¶ 28, 31, 34, 37, 40, 43). It is dubious whether these are separate claims.

[3]    Treistman does not specify whether his claims are against defendants in their personal or official capacities (or both).

### I. Sovereign Immunity

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 81 of 84

Treistman v. McGinty, Not Reported in Fed. Supp. (2018)

2018 WL 4078262

Defendants argue that Treistman's official capacity claims are barred by the Eleventh Amendment. (Dkt. No. 16, Attach. 3 at 9-11.)

It is well settled that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Because New York has not waived its immunity as to any of the claims alleged and the New York State Family Court is part of the New York State Unified Court System, which is an arm of the state, the claims against it are dismissed. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Gollomp v. Spitzer*, 568 F.3d 355, 365-67 (2d Cir. 2009); *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004); *Robertson v. Allen*, 1:15-cv-11, 2016 WL 205381, at *9 (N.D.N.Y. Jan. 15, 2016); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010); *Jones v. Nat'l Commc'n and Surveillance Networks*, 409 F. Supp. 2d 456, 466-67 (S.D.N.Y. 2006), *aff'd*, 266 F. App'x 31 (2d Cir. 2008). Likewise, Treistman's claims against the remaining defendants in their official capacities as Family Court employees, (Compl. ¶¶ 3-4), are also barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit."). [4]

[4]    Treistman attempts to circumvent this bar by arguing that sovereign immunity is abrogated by Title VI of the Civil Rights Act of 1964. (Dkt. No. 21 at 8-9.) However, Title VI only prohibits discrimination based on "race, color, or national origin," in connection with "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d; *see Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) ("In order to establish a claim based on [Title VI], the plaintiff must show, *inter alia*, that the defendant discriminated against him on the basis of race[.]"). Because Treistman alleges that the conduct he complains of was "motivated in part by a discriminatory purpose of gender discrimination," (Compl. ¶ 26), not race, Title VI is inapplicable. Furthermore, Treistman's alternative argument that "New York State has also waived its sovereign immunities for its officials under [Section 8 of] the Court of Claims Act," (Dkt. No. 21 at 9 n.2), is accurate, but misplaced. *See Samuel Adler, Inc., v. Noyes*, 285 N.Y. 34, 35 (1941) ("New York has not consented that any action to recover a sum of money may be brought against it in any of its tribunals other than the Court of Claims.").

## II. Absolute Judicial Immunity

**\*2**  The Eleventh Amendment does not bar Treistman's claims against defendants in their individual capacities. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against [a state official] in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment."). Nonetheless, defendants argue that Judge McGinty and his court clerks are entitled to absolute judicial immunity for the claims against them in their individual capacities. (Dkt. No. 16, Attach. 3 at 7-9.) In response, Treistman argues that neither Judge McGinty nor his court clerks are entitled to judicial immunity, in sum, because "[t]he docketing and scheduling of trial dates was not discretionary, and was constrained by the mandatory statute so as to be scheduled within 90 days of trial commencement." (Dkt. No. 21 at 12-18.)

Judges have absolute immunity from liability for their judicial actions, *see Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009), and are subject to liability only for non-judicial actions or judicial actions "taken in the complete absence of all jurisdiction," *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Such an immunity "is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11. Thus, it "operates to shield judges acting in their official capacity and bars claims against [judicial] defendants in their individual capacities," *McKnight*, 699 F. Supp. 2d at 523 (internal quotation marks and citations omitted).

[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him.... [T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously,

Case 3:24-cv-01235-DNH-TWD   Document 4   Filed 12/18/24   Page 82 of 84
Treistman v. McGinty, Not Reported in Fed. Supp. (2018)
2018 WL 4078262

or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.

*Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (footnote, internal quotation marks, and citation omitted).

Treistman argues that absolute judicial immunity is inapplicable here because the family court is one of limited jurisdiction and N.Y. Comp. R. & Regs. tit. 22, § 205.14 removes any discretion from the ministerial act of scheduling proceedings in such a way that exceeds ninety days. (Dkt. No. 21 at 15-17.)

Here, it is abundantly clear that Judge McGinty had jurisdiction over the underlying child custody proceedings. *See* N.Y. Fam. Ct. Act § 115. Even if Judge McGinty's conduct in allowing the proceedings to exceed ninety days was motivated by impropriety, as Treistman contends, it does not mean his actions were taken in the complete absence of all jurisdiction. *See Bliven*, 579 F.3d at 209 (holding "allegations of bad faith or malice cannot overcome judicial immunity"). Additionally, any error in extending the custody proceeding beyond ninety days did not affect the court's jurisdiction:

> Where the family court commences a hearing or trial to determine the issue of custody or visitation (whether permanent or temporary), [N.Y. Comp. R. & Regs. tit. 22, § 205.14] requires that the hearing or trial proceed to completion within 90 days. While this administrative rule is most salutary, there is no express provision for enforcement of the rule. If the matter is not completed within 90 days, the court does not lose jurisdiction to decide the matter; indeed, to require the parties to start over again would defeat the very purpose of the rule. Rather, the purpose of the rule would appear to be to give the parties, should the 90-day deadline approach or be exceeded, the opportunity to urge both the assigned judge and the local administrative judge to take steps to assure timely completion of the hearing or trial.

**\*3** Alan D. Scheinkman, West's McKinney's Forms Matrimonial and Family Law § 20:46 (April 2018) (internal citation omitted). As such, Treistman's claims against Judge McGinty in his individual capacity must fail.

Additionally, judicial immunity extends to non-judges "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). A clerk's acts that are performed at the direction or under the supervision of a judicial officer come under the ambit of judicial immunity. *See Bliven*, 418 F. Supp. 2d at 138; *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988) (finding that court clerks are entitled to absolute immunity where their acts are of a judicial nature). "A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and their supporting staff are afforded absolute immunity." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997).

Here, the complaint alleges that Weiner and other unnamed clerks "effectuated scheduling of hearing dates" in such a fashion that extended the custody hearing beyond ninety days, in violation of Treistman's due process rights. (Compl. ¶¶ 5, 25.) Treistman's argument that such acts were ministerial in nature, (Dkt. No. 21 at 12-13), is not dispositive: "[e]ven when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, ... that officer's immunity is also available to the subordinate." *Weprin*, 116 F.3d at 67 (internal quotation marks and citation omitted). Accordingly, defendant court clerks are entitled to absolute immunity for their actions in controlling the court's docket, and the claims against them in their individual capacities are dismissed.

### III. Declaratory and Injunctive Relief

Case 3:24-cv-01235-DNH-TWD    Document 4    Filed 12/18/24    Page 83 of 84
Treistman v. McGinty, Not Reported in Fed. Supp. (2018)
2018 WL 4078262

Notwithstanding the foregoing, Treistman contends that he is not barred from seeking declaratory or injunctive relief because "the complaint alleges an ongoing ... violation of [a] mandatory statute, leading to [a] continuing federal due process violation." (Dkt. No. 21 at 9 (citing Compl. ¶¶ 63, 65, 70-73).)

Indeed, if a complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," then injunctive or declaratory relief is not foreclosed by immunity. *See Li v. Lorenzo*, 712 F. App'x. 21, 23-24 (2d Cir. 2017) (internal quotation marks and citations omitted) (collecting cases). However, Treistman concedes that the underlying child custody hearing "has ended with a dispositive decision." (Dkt. No. 21 at 5.) Treistman's alleged injuries stem from past conduct. (*See generally* Compl.) His speculative assertion that he "can re-petition for a similar type trial at any time, and he will face the same statutory violations with similar illegal plays," (*id.* ¶ 73), fails to convince the court that there is a plausible threat of future violations. The relief Treistman seeks is therefore entirely retrospective. *See Lorenzo*, 712 F. App'x. at 23-24. Accordingly, Treistman does not have standing to seek an injunction because there is nothing to enjoin. Likewise, Treistman is not entitled to declaratory relief because he alleges only past conduct and no ongoing or impending violation of federal law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016). Even if a declaration stating that defendants violated the subject regulation is arguably prospective in nature, the Eleventh Amendment would bar the district court from issuing it. *See Brown v. New York*, 975 F. Supp. 2d 209, 226 (N.D.N.Y. 2013) (finding that the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past" and collecting cases) (internal quotation marks and citations omitted). [5] Accordingly, Treistman's claims are not saved by the fact that he seeks injunctive or declaratory relief.

[5]    As for Treistman's claims against defendants in their individual capacities, claims for prospective relief against a state officer may be asserted only against the officer in his or her official capacity. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997) ("[T]o permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle ... that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading.")

### IV. Leave to Amend

**\*4** Finally, defendants argue that, in light of the substantive defects discussed above, granting Treistman leave to amend would be futile. (Dkt. No. 16, Attach. 3 at 14.) It should be noted that Treistman does not seek leave to file an amended complaint. (Dkt. No. 21.) However, given his *pro se* status, the court will consider whether to permit amendment in an abundance of caution. Ordinarily, a court should not dismiss a suit filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff]'s causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Here, permitting Treistman an opportunity to amend would be futile because the deficiencies identified above are substantive in nature, and better pleading could not cure them. As such, the court declines to grant Treistman leave to amend his complaint. [6]

[6]    Given the dispositive nature of the applicable immunities discussed above, the court need not address defendant's remaining arguments related to Treistman's failure to state a claim, (Dkt. No. 16, Attach. 3 at 11-13), which may have provided alternative avenues for dismissal.

Accordingly, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4078262

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.